## No. 13,918.

### W. T. ADAMS MACHINE COMPANY VS. ISIDORE NEWMAN.

#### SYLLABUS.

1. Where all the essential elements and conditions for an absolute sale are present, in a contract between parties, the effects flowing legally from that particular contract follow, whether the parties foresaw and intended them or not, and though they may refer to the contract as an agreement to sell or as a conditional sale.

2. Where machinery has been sold to a planter which he has immobilized by attaching it to his plantation and the property to which the same was attached was permitted to be seized and sold without opposition of any kind in enforcement of a pre-existing mortgage, the seller cannot, after the sale as against the purchaser, recover the machinery under a claim of ownership.

APPEAL from the Civil District Court, Parish of Orleans—*King, J.*

*Merrick & Lewis,* for Plaintiff, Appellant.

*Clegg & Quintero,* for Defendant, Appellee.

Machine Co. vs. Newman.

## STATEMENT OF THE CASE.

NICHOLLS, C. J. The plaintiffs, in their petition filed April 8th, 1895, alleged themselves to be the owners of certain boilers, cotton gins and other machinery which were then on a plantation in the Parish of East Baton Rouge, belonging to the defendant. That on July 10th, 1891, they entered into a contract with W. S. Slaughter & Bro., by which they placed the said machinery in the possession of said Slaughter with a suspensive condition of sale, that the entire price should be paid for the said machinery.

That it was understood the title to the said machinery was to remain with petitioners until the said price was paid, as would more fully appear by the said contract, which they declared they annexed. That the defendant, being well aware that said property belonged to petitioner, received possession of the same nevertheless, took possession of the same and maliciously and illegally refused to deliver the same to petitioners, although the same had been repeatedly demanded of them, claiming that the same belonged to him.

That defendant had illegally and wrongfully held possession of said property for over a year. That the action of defendant in withholding the property was malicious and for the purpose of causing petitioner an injury, and they were entitled to recover damages for the said malicious and illegal action.

That they had been injured in the sum of eight hundred and fifty dollars by said malicious and illegal action, and they placed their damage, attorney's fees, the use of the machinery for one year, the annoyance and vexation incident to and growing out of the wrongful action of the defendant at five hundred dollars, and punitive damages at three hundred dollars. They prayed that defendant be ordered, adjudged and decreed to deliver over the said machinery to them or upon failure so to do, to pay to them the price thereof, to-wit, the sum of fifteen hundred and fifty-two and 95-100 dollars, with interest from March 15th, 1893, and for eight hundred and fifty dollars damages, with legal interest thereon. Plaintiffs annexed the following instrument to their petition:

"STATE OF LOUISIANA,
County of East Baton Rouge.

"W. S. Slaughter & Bro.—Trust Deed to W. T. Adams Machine Co.,
W. M. Ross, Benefiiciary Trustee.

"This indenture, made and entered into this 10th day of July, A. D.
1891, by and between W. S. Slaughter and Joseph H. Slaughter, com-
posing the firm of W. S. Slaughter & Bro., the parties of the first part,
W. M. Ross as trustee, party of the second part, W. T. Adams Machine
Company, manufacturer, of the city of Corinth, county of Alcorn, in
the State of Mississippi, of the third part—Witnesseth:"

"That the first party, for the consideration hereinafter stated, and
the sum of one dollar to them in hand paid, the receipt whereof is
hereby acknowledged, has granted, bargained, sold and conveyed, and
by these presents do grant, bargain, sell and convey to the said second
party, his successor or successors and their assigns, all the right, title,
claim or interest, of said party of the first part in and to the following
property" (describing it). "All the above described machinery is
located in the Parish of East Baton Rouge and State of Louisiana, and
is all the machinery of this description that is owned by or in the pos-
session of the party of the first part."

"To have and to hold said property, together with all the appurte-
nances thereunto belonging and all the improvements that may be
afterwards attached or added thereunto. But this conveyance is made
in trust, however, for the following purposes, to-wit: the said first party
is justly indebted to the said third party in the sum of fifteen hundred
and fifty -two and 95-100 dollars, evidenced by our several promissory
notes or contracts, as follows, to-wit: one for the sum of $317.65, dated
the 10th of July, A. D. 1891, and due and payable on the 15th day of
September, 1891; one for the sum of $617.65, dated the 10th day of
July, A. D. 1891, and due and payable on the 1st day of January, 1892;
one for the sum of $617.65, dated the 10th day of July, 1891, and due
and payable on the 1st day of September, A. D. 1892,—which said notes
were paraphed 'Ne Varietur,' by R. J. Hummel, notary public, for iden-
tification herewith, with interest on each from date at the rate of eight
per cent. per annum until paid, and in each of which said notes it is
specified among other things that the legal title to the said machinery
for the purchase money of which said notes were given, and which is

not waived hereby, was and is reserved in the said third party until full payment of all the said notes therefor, together with all the interest accrued thereon, and to more effectually secure and make certain the payments of the said promissory notes or contracts as hereinabove described, this conveyance is executed. Now, if the said first parties shall pay off and discharge said notes as they respectively fall due, together with all the interest accrued thereon, and the costs of executing and recording this conveyance, then the same shall be void and of no effect. But if default shall be made in the payment of said promissory notes or contracts, or either of them, or any part thereof or either of them, as they shall respectively and successively fall due as hereinabove provided, then and in that event each and all of said notes, whether due or not, according to tenor and effect thereof, shall be taken and considered as due, payable and collectible from the date of such default."

"And the said second party, his successor or successors, shall at the request of the said third party, his assigns or personal representatives, with or without first taking possession of the said property, and with or without having it present at day of sale and after giving five days' notice of the time, place and terms of sale, by posting notices thereof in at least three public places in the county and State wherein said property is situated, proceed to sell the same to the highest and best bidder and purchasers for cash at the place named in such notice, and apply the proceeds arising therefrom, first, to the payment of preparing and recording this instrument; second, to the payment of two and one-half per cent. commissions thereon to said trustee or his successor and the necessary expenses incurred by him in executing said trust, which shall also include reasonable attorneys' fees by him incurred; third, to the payment of the said promissory notes or indebtedness herein secured, and the overplus, if any, then to be paid to the said first parties or whoever may be entitled to the same. And in the event of a sale of said property by said trustee, he shall make as good and valid a title to the same as the first and third parties could now make. It is further understood and agreed between the parties hereto that the said first parties are to retain possession of said property until default in the payment of one or either of said notes, and that the said third party or assigns or, personal representatives are hereby granted the right, power and privilege at any time, at their option, to appoint another trustee in the place of the said W. M. Ross to carry

out and execute the trust, and to change the said trustee as often as the said third party may so desire, which appointment may be in writing and exhibited at this said sale in the event of a sale thereof. And the said first parties hereby waive and relinquish all right of redemption and consent that the purchaser, in the event of sale of said property, or any part thereof, take a perfect and indefeasable title in and to the same."

"In testimony whereof, the first parties hereunto set their hand and seal the day and year above written."

"(Signed)    (Seal)    W. R. AYRES.

"(Signed)    (Seal)    W. S. SLAUGHTER & BRO.

"(Signed)    (Seal)    J. R. MATHEWS.

This was recorded in East Baton Rouge Parish, in the book of mortgages, on September 12th, 1891. The notes referred to in this instrument, identical except as to date of payment, were as follows: Promissory notes annexed to commission offered in evidence by plaintiff, marked Exhibits "B" and "C." Filed June 19, 1899.

"B"—$617.65.

CORINTH, Miss., July 10th, 1891.

"On the 1st day of September, 1892, we, or either of us, promise to pay to W. T. Adams Machine Co., at their office in the City of Corinth, Alcorn county, Miss., purchase money for" (describing certain machinery). "Contracted to be sold to and now in possession of the undersigned the sum of six hundred and seventeen 65-100 dollars, with interest thereon, from date until paid at the rate of 8 per cent. per annum."

"It is understood and agreed that the title in and to said property shall remain in said W. T. Adams Machine Company until this note, with all the others, for the purchase money of said property is paid, and the said W. T. Adams Machine Company, their agents, representatives, or assigns, if said sum is not paid at maturity, may either enforce a collection thereof by suit, or take possession of said property wherever found, as theirs, and in the latter event any and all sums previously paid on this or any note given for the purchase money of said property, shall be taken as rental and payment for the use, wear and tear thereof."

"And it is further agreed that if suit be brought to collect said

sum, an additional sum of 10 per cent. thereon shall be recovered as an attorney's fee thereof."

        "(Signed)   (Seal)   W. R. Ayres.

        (Signed)   "(Seal)   W. S. Slaughter & Bro.

        "(Signed)   (Seal)   J. R. Mathews.

An exception of no cause of action, filed by the defendant, was referred to the merits.

Defendant answered first pleading the general issue.

Further answering, he averred that the property described in plaintiffs' petition was an immovable by destination and was attached to the plantation in the Parish of East Baton Rouge. That he acquired the said property by purchase at a public sale made by the sheriff of East Baton Rouge, under process of court, on the............day of.................189.....

That he acquired the same free from mortgage or privilege in favor of any one and more especially the plaintiff; that he was the true and lawful owner of the same. He prayed that plaintiff's demand be rejected.

Plaintiffs filed a supplemental and amended petition, in which they reaffirmed all the allegations of the original petition. They averred that the notes referred to in the contract, annexed to and made part of the original petition, are two certain non-negotiable promissory notes, dated Corinth, Miss., July 10th, 1891, for six hundred and seventeen and 65-100 dollars ($617.65) each and payable, respectively, on the 1st of January, 1891, and 1st of September, 1892, and bearing interest at eight per cent. (8 per cent.) per annum from date.

"Your petitioner further shows that, in said notes, it was understood and agreed that the title to the machinery refe-red to in plaintiff's original petition shall remain in the W. T. Adams Machine Co., until said notes, with all others for the purchase money of said property, are paid and the said W. T. Adams Machine Company, their agents, legal representatives, or assigns, if said sum is not paid at maturity, may either enforce the collection thereof by suit, or take possession of said property wherever found, as theirs, and in the latter event any and all sums previously paid on this or any other note given for the purchase money of said property shall be taken as rental and payment for the use and wear and tear thereof."

"And it is further agreed that if the suit be brought to collect said

sum, an additional sum of ten per cent. (10 per cent.) thereon shall be recovered as attorney's fee therefor, all of which will more fully and at large appear, by reference to the said notes annexed and made part of this petition for greater certainty."

"Your petitioner further shows that said contract was recorded in the Parish of East Baton Rouge, and that Isadore Newman, the defendant in this case, had notice of all the conditions annexed to this contract, and, nevertheless, maliciously and illegally took possession of petitioner's property and openly refused to deliver same to your petitioner."

They prayed for citation and for judgment as prayed for in their original petition.

Defendant excepted to this petition for the reason:

"1st. That the amended and supplemental petition changes the issues presented in the original petition and delays the trial of this cause."

"2nd. That the original petition herein filed was a suit upon a contract, or a suit sounding in damages, and that the exception of no cause of action has been cumulated with the merits, and that it is now too late for the plaintiff to change or attempt to change the issue and to bring suit upon said note or notes."

"3rd. That the facts sought to be alleged in the amended and supplemental petition were known to the plaintiff and to his counsel, and, if true, could have been, and should have been, set up in the original petition."

In view of the premises, they prayed judgment on these exceptions, and that the amended and supplemental petition be rejected at plaintiff's costs, and, as in his original answer, prayed that the plaintiff's suit be dismissed at his costs.

These exceptions were referred to the merits.

The District Court rendered judgment in favor of the defendant, and plaintiff appealed.

The evidence shows that the machinery involved in this litigation was placed in the possession of Slaughter & Bro., under their contract with plaintiffs, and was by them set up on their plantation in East Baton Rouge.

That they paid the plaintiffs, upon the price of this machinery, three hundred dollars on or about the 20th of July, 1891, and three

hundred and twenty-two dollars on or about the 26th of September, 1891; that no other payments were made.

The defendant, holding a mortgage on this plantation on which the machinery was, enforced the same by seizure and sale and at the same made in execution became the adjudicatee. Upon the certificate of mortgages read at the sheriff's sale by the sheriff, under the number 12, was recited: "A trust deed in favor of W. T. Adams Machine Company for $1,552.95, evidenced by three promissory notes, all bearing interest at the rate of eight per cent. per annum from July 10th, 1891, until paid, recorded September 12, 1891.

In the brief filed on behalf of the plaintiff it is said: "The sale was a conditional sale and it was therein stipulated that the title to the machinery should remain in the vendor until the entire price was paid. A large part of the price was never paid and the title never passed to Slaughter Bros."

Plaintiffs urge that the condition here spoken of was the *suspensive condition*. That upon default of Slaughter & Bro., on the payments of the notes, they were entitled to retake possession of the machinery as being their property and that defendants' interference with the exercise by them of this right was unwarranted and unjustified. They refer the court to various articles of the Civil Code touching conditional obligations (C. C. 2471, 2457, 2043, 2044) and touching conditional sales to the decision of this court in Baldwin vs. Sheriff *et al.*, reported in 47 Ann. 1468, 1469.

They maintain that there is no immobilization of a movable which, belonging to one person, is attached to real estate by reason of the owner of the real estate attaching it to the immovable. That under a seizure and sale of the real estate with movable property attached to it, under such circumstances, the title to the movable does not pass to the purchaser as it would be the property of a third person and is therefore null. (C. C. 2452.) That the owner of the movable has the right to claim it with remuneration for its use and damages if taken and retained improperly. They maintain that even if title to the property passed to Slaughter & Bros., their vendor's privilege was not lost by the fact that the latter should have thought proper to annex the machinery to an immovable and they would have the right to assert this privilege, such action to the contrary notwithstanding.

The defendants differentiate the Baldwin case from that now before

the court. They say that in that case, though there had been a sale of the movable, the price being unpaid, the vendor had had recourse to judicial proceedings and under an enforcement of the resolutory condition he had obtained a judgment contradictorily with his vendee dissolving the sale and that the appearer, therefore, was before the court as the owner of the movable by decree of court. That in this case the plaintiff had never sued Slaughter & Bro., nor are they parties to this suit, but that plaintiffs sue as absolute owners of the machinery, as if the contract with Slaughter had never been made and as if the judicial sale of the plantation of Slaughter & Bro., to which the machinery was annexed, and at which sale the defendant bought the plantation, had never taken place. "The plaintiffs had not availed themselves of their right to sue for the dissolution of the contract, nor did they attempt to have the property upon which they might have had a privilege sold separately, but, on the contrary, as against themselves, they had shown they had delivered the property with a dissolving condition to its debtor and to be sold confusedly with the mass of the debtor's property. Having done this, they cannot claim even a vendor's privilege and cannot set up a claim of ownership against a third person because it has not caused itself to be declared by a court entitled to the effect of the dissolving condition and has not placed itself in the position of such creditor as is required by the Code."

We have to dispose of the rights of parties as presented by the pleadings.

Plaintiffs *claim the ownership of the machinery* covered by the contract made by them with Slaughter & Bro. They say that contract evidenced a mere conditional sale—a sale suspended by a condition—the condition being that the entire price should be paid before the title to the property should pass. Is that position sustained by the evidence? We think not. Comparison of their contract with Slaughter Bros. with that referred to by this court in State *ex rel.* Buckley vs. Whited & Wheless (104 La. 125), and with that discussed in Heryford vs. Davis (102 U. S. 235), will show that the contract between themselves and Slaughter Bros. was evidently a present sale, intended to be and actually in such form and condition as would enable them to insist that it evidenced either an absolute sale or a conditional sale under a suspensive condition as the requirements of their interests under differing circumstances might exact, but it is impos-

sible for a contract at one and the same time to be a contract of entirely different and conflicting characteristics. Our Code says that all things that are not forbidden by law, may legally become the subject of or the motive for contracts, but different agreements are governed by different rules adapted to the nature of each contract to distinguish which it is necessary in every contract to consider:

1st. That which is the essence of the contract for the want whereof there is either no contract at all or a contract of another description. Thus a price is essential to the contract of sale; if there be none it is either no contract, or if the consideration be other property it is an exchange.

2nd. Things which though not essential to the contract, yet are implied from the nature of such agreement if no stipulation be made respecting them, but which the parties may expressly modify or renounce without destroying the contract or changing its description; of this nature is warranty which is implied in every sale, but which may be modified or renounced without changing the character of the contract or destroying its effect.

3rd. Accidental stipulations which belong neither to the essence nor the nature of the contract, but depend solely on the will of the parties. The term given for the payment of a loan, the place at which it is to be paid and the nature of the rent payable on a lease are examples of accidental stipulations.

What belongs to the essence and to the nature of each particular description of contract is determined by the law defining such contracts; accidental stipulations depend on the will of the parties, regulated by the general rules applying to all contracts."

Our Code recognizes conditional contracts; it recognizes a classification of conditions, as "conditions precedent" and "conditions subsequent," "suspensive conditions" and "dissolving or resolutory conditions," and it affixes to each class their appropriate legal effect. It recognizes (as we declared in the Buckley case) "promise of sale, conditional sales and sales with earnest," also absolute present sales with the dissolving condition implied.

There was nothing standing in the way of the plaintiffs making a conditional sale of the machinery referred to and fixing the conditions attached thereto, but it was beyond their power to make, in fact, a contract of absolute sale of the machinery and withdraw from such

sale the effects fixed and flowing from it by virtue of the law itself. We repeat here what we said in the Buckley case: "Parties are at liberty to make contracts as long as they are legal, and to agree upon accidental stipulations, but when they make a contract with fixed legal essentials they are powerless to control the legal effect of the contract itself; the contract being made, the law governs its results (Cooley vs. Broad, 29 Ann. 345). What we have just said about "rights" extends to "remedies." In Lericks vs. Walker, 15 Ann. 246, this court said: "Parties regulate their own conduct by their stipulations, but they cannot prescribe rules of proceeding for public officers nor demand that the courts of justice shall depart from the usual mode of enforcing their decrees."

The plaintiffs do not claim this machinery as theirs by virtue of the operation in their favor of the resolutory or dissolving condition on a contract in which the title of the property, the object of the sale, passed first to the purchaser and was subsequently withdrawn by reason of non-payment of the price. Had they presented such a claim they would have been met with the legal proposition that the dissolution of a contract for failure of parties to comply with engagements does not take place of right; the party complaining of the breach had to either sue for the dissolution or ask for the same by way of an exception taken in a suit brought against himself.

The condition which they invoke in their favor is not the "resolutory condition," or "dissolving condition," but the "suspensive condition," which, if it existed, kept this machinery constantly not only on paper, but, in fact, in the ownership of the plaintiffs. That claim is not supported by the evidence. The contract they made is not such as they claim it to have been. With matters standing as they are, the requirements of the case do not call for any expression of opinion as to what rights or remedies they might have had had they pursued a different course, nor as to whether they yet have any rights or remedies, and, if so, what they are or may be. The plaintiffs did not enjoin the sale of this machinery forming part of the plantation when it was sold in execution of defendant's mortgage, nor did they intervene or proceed by third opposition to safeguard their rights. They allowed the property to be sold as an entirety and defendant to purchase it as such. We do not think it necessary to enter into any extended discussion of the legal points raised in this case. They will

be found covered by the opinions rendered in the case of Baldwin vs. Sheriff, 47 Ann. 1468; Maginnis vs. Oil Mill, 47 Ann. 1489; Scannell vs. Beauvais, 38 Ann. 217; Walburn Swenson Co. vs. Darrell, 49 Ann. 1044; Hall *et al.* vs. Hanley & Co., 49 Ann. 1047, and the authorities cited in those cases. For the reasons assigned, it is ordered, adjudged and decreed, that the judgment appealed from be and it is hereby affirmed.