For the reasons assigned, the judgment appealed from is affirmed.

158 So. 635

THOMAS v. PHILIP WERLEIN, Limited.

No. 32909.

Jan. 7, 1935.

Merrick, Schwarz, Guste, Barnett & Redmann, of New Orleans, for appellant.

Cabral, Lenfant & Villere, of New Orleans, for appellee.

ROGERS, Justice.

On behalf of herself and her two minor children, Mrs. Marie Breaux, widow of

George B. Thomas, sued Philip Werlein, Limited, for $4,000 damages, alleging that defendant, through its agents, had wrongfully and fraudulently removed from her home at No. 818 Valence street, in the city of New Orleans, a radio-phonograph purchased by her husband. Plaintiff also asked for the return of $270, which had been paid on account of the purchase price of the instrument. The court below gave plaintiff individually and on behalf of her minor children a judgment for $800 as damages, and for $208.78 as the amount paid on the purchase price. From this judgment defendant has appealed, and plaintiff has answered the appeal, asking for an increase in the amount of damages awarded by the judgment.

The record discloses the following undisputed facts, viz.: That the radio-phonograph in question was purchased by George B. Thomas from the defendant on March 7, 1930. That Thomas, who became afflicted with tuberculosis, was confined in the government hospital at Alexandria, La., from April 20, 1932, until his death on February 22, 1933. That on September 7, 1932, the defendant sent two men to the home of the plaintiff, Mrs. George B. Thomas, for the purpose of repossessing the radio-phonograph. That these agents of defendant secured the instrument and delivered it to defendant. That the original purchase price of the instrument was $248.78, on which $204.78 had been paid, leaving a balance due of $44 at the time the instrument was repossessed by defendant. That neither the radio-phonograph nor the amount paid on account of the purchase price thereof has been returned or tendered to the plaintiff.

The disputed point in the case is whether, as contended by defendant, plaintiff voluntarily surrendered the instrument to defendant's agents, or whether, as contended by plaintiff, defendant's agents obtained possession of the instrument by means of threats and misrepresentations. There is a conflict among the witnesses on the point. However, the testimony satisfies us that the act of defendant's agents in retaking the radio-phonograph was clearly illegal and that defendant is liable for the damages caused thereby.

It is proved to our satisfaction that after plaintiff's husband had been admitted to the hospital at Alexandria, plaintiff entered into an arrangement with the defendant to pay in smaller installments the trifling balance due on the radio. That subsequent to that arrangement, defendant employed two professional locators and collectors to retake the instrument. That without prior notice to plaintiff these agents called at plaintiff's residence at about 6:30 o'clock in the evening of September 7, 1932, for the purpose of seizing the radio. That plaintiff, who was employed in a furniture store on Tulane avenue, was not at home. That plaintiff's mother was at home, and that defendant's agents demanded of her that she surrender the radio, threatening to break open the door if she did not do so. That defendant's agents attempted to force the door, but were prevented from doing so by plaintiff's mother. That plaintiff's mother then called on a lady who lived next door for advice. That while plaintiff's mother was engaged in argument with defendant's agents, plaintiff arrived at home from her work. This was about 7 o'clock. That defendant's agents then demanded the

radio of plaintiff, threatening and abusing her and her mother. That one of the men falsely declared that he was from a certain lawyer's office, representing defendant, and the other man fraudulently represented himself as a constable. That they presented a fictitious document which they represented to plaintiff and her mother as a court order for the seizure of the radio. That plaintiff then telephoned her employer, and that he, after one of the men had informed him over the telephone that he was from the sheriff's office, advised plaintiff to submit to the seizure of the radio by defendant's agents.

The testimony shows clearly, to our minds, that plaintiff never consented at any time to the repossessing of the radio by defendant, and that she only acquiesced in its seizure by defendant's agents in the belief induced by their threats and false representations that they were officers of the court and were acting under an order of court authorizing the seizure.

It is no defense to say that the contract between plaintiff's deceased husband and the defendant was a conditional sale, and under its terms, after default in payment and written demand, defendant was authorized. to enter the purchaser's premises and retake the instrument sold.

The contract relating to the radio was one of sale which vested title to the article sold in the purchaser immediately upon its execution. Byrd v. Cooper, 166 La. 402, 117 So. 441; Grapico Bottling Works v. Liquid Carbonic Co., 163 La. 1057, 113 So. 454.

Where all the essential elements and conditions for an absolute sale are present in a contract between parties, the effects flowing legally from that particular contract follow, whether the parties foresaw and intended them or not, and though they may refer to the contract as an agreement to sell or as a conditional sale. Adams Machine Co. v. Newman, 107 La. 702, 32 So. 38; State ex rel. Bulkley v. Whited & Wheless, 104 La. 125, 28 So. 922.

In a contract of sale the vendor has by the nature of the contract a vendor's lien to secure the payment of the credit portion of the purchase price, and a right of action for the dissolution of the sale if the buyer does not pay the price. Civ. Code, arts. 3227, 2561, 2564.

The stipulation in the contract that the defendant should have the right to repossess the radio if the purchaser failed to make any payment thereon when due and that in the event of such repossession all payments previously made should be retained by defendant as rent and compensation for the deterioration of the instrument was, in effect, a stipulation that the ownership of the radio should remain in defendant until the final payment of the purchase price. The stipulation, if given effect, would convert the contract into one of lease instead of one of an absolute sale—into one in which the purchaser should owe the price without ever becoming the owner of the radio, and the defendant should retain the ownership of the instrument and yet should become the creditor of the purchaser for the price. Such a contract is not possible under the laws of this state. Barber Asphalt Paving Co. v. St. Louis Cypress Co., 121 La. 152, 46 So. 193; Byrd v. Cooper, 166 La. 402, 117 So. 441.

Hence the stipulation should be considered as not written and must be ignored. Defendant's remedy was to sue for the enforcement of its vendor's lien or for a dissolution of the sale, and not through its agents to forcibly seize the radio in plaintiff's possession.

■ The trial judge apportioned in his judgment the damages awarded plaintiff and her children. He awarded plaintiff a total of $400 for the damages suffered by her directly and $100, on the transmitted claim, for the increased sufferings of her husband. He also awarded plaintiff's children a total of $300, on the transmitted claim, for the increased sufferings of their father.

The testimony is not full enough to justify us in affirming the judgment in favor of plaintiff and her children on the transmitted claim. The only testimony in the record of the suffering of plaintiff's husband is that of plaintiff herself. She testified that the day after the radio was seized she telephoned her husband and informed him of the seizure and that he seemed to become excited on receipt of the information. She further testified that she saw her husband in July and he appeared to be considerably improved; that she saw him again in November and he looked bad and was much thinner; and that she knew he was worried about the seizure of the radio. This testimony is vague and unsatisfactory and rests too much on opinion and conjecture to make it a safe guide for the rendition of a judgment against defendant.

■ Defendant has not returned, nor offered to return, the radio to plaintiff, and has thereby indicated its purpose to rescind the sale. Plaintiff by suing for the amount paid defendant on account of the purchase price has acquiesced in such rescission. In these circumstances, the parties should be placed in their original position. Defendant has retaken and is in possession of the radio, and, consequently, it must return such partial payments as it has received thereon, viz., $208.78.

■■ It is a general rule that costs are incident to the judgment and follow the result of the suit. In this state the general rule is modified by Act No. 229 of 1910, under section 2 of which appellate courts are clothed with a discretionary right in taxing costs. Under the circumstances of this case, we think defendant should pay the costs of appeal as well as the costs of the district court.

For the reasons assigned, the judgment appealed from so far as it awards plaintiff and her children, under their transmitted rights, the sum of $400 for the increased suffering of their deceased husband and father, George B. Thomas, is annulled. In all other respects the judgment is affirmed. Defendant is to pay the costs of appeal as well as the costs of the district court.