This tort action has as its basis the alleged illegal repossession of certain farm implements by defendant, International Harvester Company, through its agents, and the removal thereof from plaintiff's farm. The company and Fred W. Tesche, its agent, are made defendants. Plaintiff was unsuccessful below and appealed from judgment dismissing his suit.
The facts of the case are undisputed. On October 28, 1936, plaintiff purchased from the company an F-20 Farmall Tractor, and on May 20, 1937, purchased from it a Farmall Mower and Sweep Rake. Both purchases were largely on credit. Notes for unpaid balances secured by mortgages on the chattel were executed. Plaintiff was unable to pay the notes at maturity but did pay substantial parts thereof. On March 15, 1939, the principal of the notes had been reduced to $466.50. Plaintiff was unable to make additional payments and was being pressed therefor. At the company's suggestion, the two debts were merged and a renewal note for the balance due executed by plaintiff. This note was secured by mortgage on all of the chattels and also on two mules. It was payable in monthly installments during the year 1939, none of which was paid at maturity.
On January 19, 1940, at the company's request, plaintiff signed a printed instrument wherein it is declared that for $1 cash and other good and valuable considerations, he did sell and deliver to the company the implements covered by said mortgages. The instrument also contains this stipulation, to-wit:
"It Is Hereby Agreed, by and between the parties, that said personal property may be sold by second party at public or private sale, without notice, and that the proceeds of said sale, less the expense of taking, caring for, keeping, fitting, repairing and selling same, shall be applied as a credit *Page 114 
on the indebtedness of said first party to said second party, as evidenced by certain promissory notes which said first party admits are unpaid at this date, as follows: * * *".
Here follows the schedule of installments with due dates, making up the note of $466.50 above mentioned. This instrument also provides that delivery to and sale of the property by the company shall in no manner relieve or release plaintiff from liability for the payment of any balance due on the note after credit of proceeds of sale of the affected chattels is applied thereon. It was also stipulated in the agreement that plaintiff was given until February 1, 1940, "to apply $260.00 on account from sale of two mules".
No effort was made to repossess the chattels under this agreement until the lapse of nearly eleven months. It was by virtue of said agreement that repossession was effected. It does not appear that the mules were sold. However, during the eleven months plaintiff did make two payments on the renewal note, amounting to $162.
On the morning of December 16, 1940, Mr. Tesche, accompanied by R.C. Erickson, agents of the company, drove to plaintiff's place six miles from the City of Monroe, Louisiana, and there discussed the matter of repossession with him. At that time plaintiff was informed that the company would avail itself of the rights granted by the written agreement of January 19th, by repossessing the chattels. He offered no objection to the proposed action. The agents returned to Monroe and sent a truck out to the place. The chattels were loaded thereon and brought to Monroe and stored. Plaintiff was not at the time at home. No force was used nor was such necessary to regain possession of the property.
Plaintiff was promptly notified by registered mail that the property had been repossessed and the place of its storage imparted to him. He was further advised that he might reclaim the property until January 15th by payment of the balance due on the note. He did not avail himself of this offer.
This controversy centers around an interpretation of the agreement signed by plaintiff on January 19, 1940, and the determination of rights flowing therefrom.
Plaintiff's counsel argues that the agreement was intended to be a sale but that it is abortive as such because the consideration of $1 recited therein admittedly was not paid, and that even if paid, it would not have been a serious consideration such as is required by the laws of this state. It is further argued that the instrument could not have had the force of a sale as plaintiff was allowed to possess the property some eleven months after its date, possession being an indispensable prerequisite to a sale of personal property. The instrument on its face negatives the declaration that it is a sale. The fact that plaintiff's obligation was not extinguished thereby proved beyond question no sale was intended.
Counsel for defendants, on the other hand, contend that the agreement was intended by the parties to simply be an authorization to the company to take into its possession the mortgaged property when it became evident that plaintiff would be unable to meet the notes' installments, and to sell it and apply the proceeds to plaintiff's account less expenses incurred in doing so.
The following articles or parts of articles of the Civil Code should be considered in arriving at a correct interpretation of the agreement in question, viz:
Article 1945.
"Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify them. Upon this principle are established the following rules:
* * * * *
"Second — That courts are bound to give legal effect to all such contracts according to the true intent of all the parties;
"Third — That the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences;
"Fourth — That it is the common intent of the parties — that is, the intention of all — that is to be sought for; if there was a difference in this intent, there was no common consent and, consequently, no contract. (As amended, Acts 1871, No. 87.)."
Article 1950.
"When there is anything doubtful in agreements, we must endeavor to ascertain what was the common intention of the parties, rather than to adhere to the literal sense of the terms."
Article 1951.
"When a clause is susceptible of two interpretations, it must be understood in that *Page 115 
in which it may have some effect, rather than in a sense which would render it nugatory."
Article 1956.
"When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation."
Applying these rules of construction to the agreement in question, in the light of the action of the parties thereto, the contentions of plaintiff clearly appear unfounded. It seems manifest that what was intended by the parties was that when it became evident plaintiff could not or would not meet his obligations to the company, the right was conferred on it to take over the property without legal proceeding, make such repairs thereto as were necessary and resell it for plaintiff's account. He constituted the company his agent to effectuate said purposes.
The contention that the instrument was without valid consideration is without merit. It is true the one dollar recited as paid to plaintiff was not paid, but the indulgence granted plaintiff therein did provide adequate consideration for the effectiveness of the agreement. The company could have foreclosed on plaintiff at the time the agreement was entered into, but elected to give him another opportunity to discharge his obligation. Plaintiff has not attempted to repudiate the agreement but admits his signature thereto was freely obtained. The agreement is law between the parties. Article 1901 of the Civil Code.
As defendant acted under the authority and within the letter of said agreement in repossessing the property, it cannot be said that its conduct in that connection was tortious or wrongful.
Had plaintiff believed the agreement without effect and meaningless, he would have opposed the agent's proposal to repossess the property the morning it was repossessed. His silence at the time and subsequent inaction reflect his own construction of the agreement. His failure to then act connotes acquiescence in the proposed action.
The rule of law is well settled in this state that a stipulation in a credit sale of movables or one simultaneous therewith to the effect that on default of payment of note or notes representing the credit part of the price, the seller would have the unqualified right to repossess the chattels, is unenforcible. Thomas v. Philip Werlein, Ltd., 181 La. 104,158 So. 635; Mrs. Bertha G. Perry v. Junius Hart Piano House, Ltd., 10 Orleans App. 170.
But it is also well settled that if pursuant to such a stipulation, the seller, without force, but with the consent, express or tacit, of the purchaser, repossesses the mortgaged property, his action in this respect is not tortious and no action in damages lies against him therefor. The question is thoroughly discussed in the case of Mrs. M.K. Waldrop v. Singer Sewing Machine Company, 14 Orleans App. 384.
The judgment appealed from is hereby affirmed with costs.
DREW and HAMITER, JJ., concur.