# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2021 CA 0438

## ATLANTIC PACIFIC EQUIPMENT, INC.

### VERSUS

## GULF SOUTH SERVICES, INC.
## F/K/A GULF SOUTH SCAFFOLDING, INC.

DATE OF JUDGMENT: **MAY 1 8 2022**

ON APPEAL FROM THE SIXTEENTH JUDICIAL DISTRICT COURT
NUMBER 131,667, DIVISION E, PARISH OF ST. MARY
STATE OF LOUISIANA

HONORABLE KEITH J. COMEAUX, JUDGE

* * * * * *

W. Scott Keaty                        Counsel for Appellant-Plaintiff/
Joshua G. McDiarmid                   Defendant-in-Reconvention
Juan J. Moreno                        Atlantic Pacific Equipment, Inc.
Baton Rouge, Louisiana


Jude C. Bursavich                     Counsel for Appellee-Defendant/
Carroll Devillier, Jr.                Plaintiff-in-Reconvention
Baton Rouge, Louisiana                Gulf South Services, Inc. f/k/a
                                      Gulf South Scaffolding, Inc.


Bernard E. Boudreaux, Jr.
Baton Rouge, Louisiana

* * * * * *

BEFORE: GUIDRY, WELCH, THERIOT, HOLDRIDGE, AND CHUTZ, JJ.


**Disposition: AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH
INSTRUCTIONS. MOTION TO CORRECT RECORD DENIED. ANSWER TO APPEAL
DENIED.**

*Holdridge J., agrees in part, dissents in part for the attached reason*
*Welch J. concurs without reasons. in result*

**CHUTZ, J.**

Plaintiff-appellant, Atlantic Pacific Equipment, Inc. (AT-PAC), appeals a trial court judgment denying its claim for past due rentals of scaffolding equipment. For the following reasons, we affirm in part, reverse in part, and remand this matter.

## FACT AND PROCEDURAL BACKGROUND

AT-PAC is in the business of selling and leasing scaffolding equipment. Gulf South Services, Inc. (GSSI) has done business with AT-PAC since 2010, and sometimes re-rented the scaffolding equipment it leased from AT-PAC to its own customers. GSSI's account became delinquent in 2015. AT-PAC sent GSSI a statement of account, dated February 28, 2017, reflecting a balance owed totaling over $1.5 million. For some time previously, the parties had been discussing the possibility of GSSI purchasing the leased equipment for a lump sum including the past due rentals owed. No agreement had been reached by March 14, 2017, when AT-PAC sent a letter to GSSI demanding it immediately pay past due rentals in the amount of $1,520,303.12 and return all leased equipment to AT-PAC. The parties continued negotiations and reached an agreement for GSSI to buy the equipment. In accordance with their agreement, AT-PAC sent GSSI an invoice on March 24, 2017, for the purchase of 108,773 pieces of leased equipment for the price of $1,580,991.65, which included and/or was equal to the amount of past due rentals owed. GSSI responded by sending AT-PAC a purchase order for the leased equipment for the price stated on the invoice. The parties did not execute any additional sale documents.

In an attempt to obtain financing for the purchase price, GSSI requested AT-PAC provide a letter for GSSI to present to potential lenders indicating forgiveness of the past due rentals GSSI owed. In response, AT-PAC provided a letter, dated April 17, 2017, stating:

2

> Upon the receipt of good and valid funds by AT-PAC in the amount of One Million, Five Hundred Eighty Thousand, Nine Hundred Ninety-One Dollars and Ninety-One Cents[1] ($1,590,991.61 USD), [GSSI] will have satisfied all of its amounts due and owing to AT-PAC.

GSSI was unable to secure financing, and it never paid the purchase price for the equipment.

By letter dated August 24, 2017, AT-PAC advised GSSI that its offer to accept $1,580,991.61[2] as full payment of all obligations GSSI owed would expire on September 1, 2017, failing which AT-PAC reserved its right to commence legal proceedings. AT-PAC received no payment. On October 6, 2017, AT-PAC filed suit alleging GSSI was in breach of both the lease agreement and the buy/sell agreement, having failed to pay either the rentals due or the purchase price. AT-PAC further alleged GSSI had also refused to surrender the leased equipment. AT-PAC requested all relief to which it was entitled, including, but not limited to, past due rentals and specific performance. Subsequently, AT-PAC filed an amended petition in which it also requested present and future rentals, in addition to past due rentals.

After AT-PAC filed suit, GSSI agreed to pay AT-PAC $35,000.00 per month, which was to be credited against any amounts GSSI was held to owe AT-PAC. GSSI made three payments, totaling $105,000.00. The payments were made in return for AT-PAC agreeing to engage in settlement negotiations while the legal proceedings were ongoing, but the parties never reached a settlement.

In March 2018, AT-PAC filed thirteen liens on ten well sites operated by Anadarko Petroleum Company, one of GSSI's largest customers, in order to secure the rentals GSSI owed. Each of the liens was in the amount of $2,060,741.38. On

---

[1] Due to typographical errors in the letter, there is a small inconsistency between the written-out amount and the numeric amount stated as being due, as well as a discrepancy of a few cents between those amounts and the actual purchase price of $1,580,991.65.

[2] Again, there is a discrepancy of a few cents between the figure stated in the letter and the actual purchase price of $1,580,991.65.

3

April 27, 2020, GSSI filed a reconventional demand against AT-PAC alleging the liens were filed in bad faith with full knowledge that the amount of the liens exceeded any privilege AT-PAC might have and with no justifiable evidence that AT-PAC equipment was located on or had been used at the well sites. GSSI sought judgment for business losses and damages to its business reputation, as well as for attorney's fees, under the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1401, *et seq.* In response, AT-PAC filed peremptory exceptions raising objections of no cause of action and prescription.

In April 2018, AT-PAC filed a rule to surrender leased property in which it requested the return of all equipment from GSSI. After GSSI "voluntarily agreed" to return the equipment, the trial court signed a consent judgment dated May 25, 2018, ordering GSSI to "make a good faith effort to return all of *Plaintiff's equipment* in due course ... with all parties reserving all rights with respect to any property that is returned or not returned and any damage thereto." (Emphasis added.) At the time of trial, all equipment had been returned except for 1,915 pieces, valued at $45,123.37.

Trial of this matter was held on June 15 and 16, 2020. Thereafter, the trial court issued written reasons for judgment in which it rejected AT-PAC's claim for equipment rentals. The trial court concluded the debt GSSI owed for rentals was extinguished by novation when a sale of the equipment occurred in March 2017. Noting that AT-PAC elected to seek a return of its equipment upon "the dissolution of the sale," the trial court held AT-PAC was only entitled to an award of $45,123.37 for unreturned equipment. The trial court further held AT-PAC should pay $59,876.63 to GSSI, representing the balance of the $105,000.00 paid by GSSI, after that amount was offset by the award made to AT-PAC. Finally, the trial court held GSSI's reconventional demand was prescribed since it was filed more than one year after AT-PAC filed the liens on which GSSI's LUTPA claim is based. In any event,

4

the trial court concluded GSSI failed to prove it sustained any damages, having presented only speculative evidence to establish its claim.

The trial court signed a judgment on December 9, 2020, in accordance with its written reasons for judgment.[3] AT-PAC has now appealed, arguing in three assignments of error that the trial court erred in finding a novation occurred and in failing to award judgment in its favor for equipment rentals owed. GSSI answered the appeal, requesting we reverse the dismissal of its reconventional demand as being prescribed.

## DISCUSSION

AT-PAC argues the trial court erred in finding GSSI owed AT-PAC only $45,123.37 when GSSI had use of AT-PAC's equipment for years without paying any rentals. While AT-PAC admits a sale to GSSI occurred, it argues: (1) no novation occurred as a result of the sale; and (2) the sale was subsequently dissolved for nonpayment of the purchase price. AT-PAC contends the evidence establishes it was the clear intent of the parties that GSSI's debt would be extinguished only upon receipt of the purchase price. Thus, while not disputing on appeal that a sale occurred,[4] AT-PAC argues the trial court erred in finding there was a novation since the purchase price was never paid. Additionally, AT-PAC asserts that upon dissolution of the sale, the parties should have been returned to their original positions, meaning GSSI owed both the "Original Rental Obligation ($1,580,991.61)

---

[3] The judgment contains no mention of AT-PAC's claim for equipment rentals, despite the trial court's consideration of the claim in its written reasons for judgment. Generally, silence in a judgment as to any issue, claim, or demand placed before the trial court is deemed a rejection of the claim and the relief sought is presumed to be denied. *Schoolhouse, Inc. v. Fanguy*, 10-2238 (La. App. 1st Cir. 6/10/11), 69 So.3d 658, 664. Therefore, we consider AT-PAC's claim for unpaid equipment rentals to have been denied by the trial court.

[4] In its reasons for judgment, the trial court found a sale had occurred "upon the issuance of the invoice and a purchase order being rendered by GSSI" since the thing, the price, and the consent of the parties, *i.e.*, the required elements of a sale under La. C.C. art. 2439, were all present at that point. This factual finding has not been challenged on appeal.

5

and continued to accrue [an] Additional Rental Obligation ($930,733.84), totaling $2,511,725.45."

In its written reasons for judgment, the trial court specifically concluded "the original debt [for past due rentals] was extinguished by the novation agreed to in the form of a sale." This conclusion was the basis of the trial court's ruling denying AT-PAC's claim for past due rentals.

Novation is the extinguishment of an existing obligation by the substitution of a new one. La. C.C. art. 1879. For a novation to occur, the parties' intention to extinguish the original obligation must be clear and unequivocal. La. C.C. art. 1880. Novation may not be presumed, and the burden of proving novation falls on the party who seeks its protection. La. C.C. art. 1880; *Ciolino v. First Guaranty Bank*, 12-2079, 12-2080 (La. App. 1st Cir. 10/30/13), 133 So.3d 686, 691. The intention to novate may be shown by the character of the transaction, the facts and circumstances surrounding it, as well as by the terms of the agreement itself. *Ciolino*, 133 So.3d at 691.

It appears the parties' intention was for the purchase price of the equipment to satisfy the past due rentals owed by GSSI. What is less clear is whether the parties intended for a novation to occur regardless of whether GSSI actually paid the purchase price. In the April 2017 forgiveness letter requested by Gulf State, AT-PAC stated that "[u]pon the receipt of good and valid funds" in the amount of $1,580,991.61 (the purchase price), GSSI "will have satisfied all of its amount due and owing to [AT-PAC]." Even though the letter post-dated the sale, it nevertheless may be evidence of AT-PAC's intent to forgive GSSI's debt for past due rentals only upon payment of the purchase price. Such a conclusion is logical because creditors are not in the business of releasing debtors who have not paid. See *Ciolino*, 133 So.3d at 691; *Pike Burden Printing, Inc.*, 396 So.2d 361, 366 (La. App. 1st Cir. 1981). Regardless, in light of subsequent actions by the parties that constituted a

6

voluntary dissolution of the sale, it is unnecessary to determine whether the trial court manifestly erred in finding a novation occurred.

The principal obligation of a buyer is to pay the sale price. La. C.C. art. 2549; *Groner Apartments v. Controlled Building Systems*, 432 So.2d 1142, 1145 (La. App. 3d Cir.), writ denied, 438 So.2d 1106 (La. 1983). Upon a buyer's failure to do so, the seller has two remedies available: one for the enforcement, or affirmance, of the contract and the other for its dissolution. *Groner Apartments*, 432 So.2d at 1145. While AT-PAC did not specifically pray for dissolution of the sale to GSSI, the petition included a prayer for all relief AT-PAC was entitled to by law or equity. Moreover, the petition included allegations that there was a sale agreement but GSSI never paid the purchase price, which is sufficient to state a cause of action for dissolution of a sale for nonpayment under La. C.C. art. 2561. See *Sajare Interests, Ltd. v. Esplanade Management, Inc.*, 459 So.2d 748, 751 (La. App. 4th Cir 1984).

Moreover, after AT-PAC filed a rule in these proceedings for GSSI to surrender its leased equipment, GSSI voluntarily agreed to return the equipment. The parties' agreement that GSSI would return the equipment to AT-PAC constituted a voluntary dissolution of the sale. See La. C.C. art. 2013; La. C.C. art. 2561, Revision Comments – 1993, Comment (i). Moreover, the dissolution was judicially memorialized in the consent judgment the trial court signed on May 25, 2018, wherein the trial court granted AT-PAC's rule for surrender of leased property and stated GSSI should return "Plaintiff's equipment."

Accordingly, while the trial court did not expressly declare a dissolution of the sale, the court clearly recognized a dissolution of the sale had occurred under the circumstances. In its written reasons for judgment, the court stated, "Since [AT-PAC] has filed a rule for return of the merchandise, this indicated to the Court that it exercised its remedy *upon the dissolution of the sale* to a return of the product." (Emphasis added.) The trial court's acknowledgement of the dissolution is also

7

implicit in the judgment rendered, which did not hold GSSI liable for any portion of the purchase price. In fact, the trial court held that GSSI was entitled to a return of the balance of the $105,000.00 GSSI did pay to AT-PAC, after that amount was offset by the $45,123.37 award made to AT-PAC. The trial court correctly recognized that the purchase price was no longer due because the parties had voluntarily dissolved the sale when GSSI agreed to AT-PAC's demand for the return of the equipment.

In *Thomas v. Philip Werlein, Ltd.*, 181 La. 104, 112, 158 So. 635 (1935), the Louisiana Supreme Court likewise dealt with a case where a sale was dissolved through the parties' actions. The seller in *Thomas* forcibly repossessed a radio from the buyer due to nonpayment of the full purchase price. The supreme court held that by repossessing the radio and declining to return it, the seller indicated its intent to rescind (dissolve) the sale. Moreover, when the buyer filed suit seeking a return of the portion of the purchase price already paid to the seller he was deemed to have acquiesced in the rescission (dissolution). *Thomas*, 181 La. at 112, 158 So. at 638.

Similarly, in the instant case, AT-PAC clearly evidenced its intent to dissolve the sale when it filed a rule for surrender of its equipment. GSSI likewise acquiesced in the dissolution when it consented to return the equipment. Further, unlike the extra-judicial dissolution in *Thomas*, the actions of the parties leading to the sale's dissolution occurred within the judicial proceedings instituted by AT-PAC. As previously noted, the parties' implicit agreement to dissolve the sale was judicially recognized in the consent judgment providing for GSSI to return the equipment to AT-PAC.

Nevertheless, despite recognizing that a dissolution of the sale had occurred, the trial court evidently did not consider the legal consequences of the dissolution. When a contract of sale is dissolved, the parties are returned to the position they originally occupied prior to the sale. *Sliman v. McBee*, 311 So.2d 248, 252 (La.

8

1975); *Thomas*, 181 La. at 112, 158 So. at 638; *In re Argo Financial, Inc.*, 337 F.3d 516, 523 (5th Cir. 2003); see also La. C.C. art. 2018 ("Upon dissolution of a contract, the parties shall be restored to the situation that existed before the contract was made.").

In addition to relieving GSSI of its obligation to pay the purchase price, the dissolution of the sale also restored the parties to the original positions they occupied as lessor and lessee. Therefore, as lessor of the equipment, GSSI owed rentals to AT-PAC under the terms of their lease agreement for the entire time the equipment was in GSSI's possession. The trial court's legal error in failing to restore the parties to their original lessor/lessee relationship led to the further error of the trial court denying AT-PAC's claim for accrued rentals. Due to its legal error, the trial court never determined the amount of accrued rentals AT-PAC was owed, either prior to or subsequent to the dissolved sale. Because the trial court failed to address this issue, we will remand the matter to the trial court with instructions to determine and fix the total amount of accrued rentals due to AT-PAC. See *Welch v. Planning & Zoning Commission of East Baton Rouge Parish*, 16-0253 (La. App. 1st Cir. 4/26/17), 220 So.3d 60, 69; *Petchak v. Bossier Parish Police Jury*, 45,705 (La. App. 2d Cir. 11/24/10), 55 So.3d 840, 855, writ denied, 11-0165 (La. 4/29/11), 62 So.3d 112.

Additionally, in view of our finding that the trial court erred in denying AT-PAC's claim for accrued rentals, we also reverse the trial court's order for AT-PAC to pay GSSI the balance of the $105,000.00 in payments it made to AT-PAC (after offsetting that amount against the $45,123.37 awarded to AT-PAC for unreturned equipment). At trial, the parties stipulated the payments GSSI made to AT-PAC should be credited against any amount GSSI was determined to owe AT-PAC. Because the trial court concluded AT-PAC was not entitled to any amount other than $45,123.37 for unreturned equipment, it ordered AT-PAC to return the balance of

9

the payments to GSSI. However, we now hold the disposition of these payments should await a determination upon remand of the amount due to AT-PAC for accrued rentals. The trial court should credit GSSI for $105,000.00 against any award made to AT-PAC.

## ANSWER TO APPEAL

In its answer, GSSI requests we reverse the dismissal of its reconventional demand. GSSI asserts it is entitled to $843,526.64 on its LUTPA claim for business losses and damages to its business reputation resulting from the wrongful filing of the thirteen liens by AT-PAC. GSSI maintains the liens contain misrepresentations that AT-PAC equipment was utilized on the well sites in question, AT-PAC was not paid for the use of the equipment, and AT-PAC was entitled to a privilege on the well sites. According to GSSI, its LUTPA claim was not prescribed because the "continuous misrepresentations" contained in the liens, together with AT-PAC's failure to cancel the liens, constituted a continuing tort.

Under La. R.S. 51:1409(E), LUTPA claims must be filed within one year "from the time of the transaction or act which gave rise to this right of action." In rejecting GSSI's continuing tort theory, the trial court stated:

> [T]he original wrongdoing was the filing of the liens on the thirteen well sites in four various parishes around South Louisiana. This was done on March 2, 2018. The Reconventional Demand alleging Louisiana Unfair Trade Practices was filed on April 27, 2020, and thus more than one year from the alleged date of the unfair trade practices of March 2, 2018. Since this claim is one of tort, this Court finds that the Louisiana Unfair Trade Practices claim of GSSI is prescribed.

We find no error in the trial court's ruling. A continuing tort is one where the operating cause of injury is a continuous one giving rise to continuous damages. *Crump v. Sabine River Authority*, 98-2326 (La. 6/29/99), 737 So.2d 720, 726. It is occasioned by continuous wrongful acts, not the continuation of the ill effects of an original, wrongful act. *Crump*, 737 So.2d at 728. No continuing tort exists if the wrongful conduct is completed, but the plaintiff continued to experience injury in

10

the absence of any further activity by the tortfeasor. *Hogg v. Chevron USA, Inc.*, 09-2632, 09-2635 (La. 7/6/10), 45 So.3d 991, 1005. The pertinent inquiry is whether the tortfeasor perpetuates the injury through overt, persistent, and ongoing acts. *Hogg*, 45 So.3d at 1005.

Herein, the operating cause of GSSI's alleged injuries was the filing of the liens by AT-PAC on March 2, 2018. GSSI did not establish any continuous wrongful acts by AT-PAC. The fact that the liens remained on the public records was simply a continuing ill effect of the alleged wrongful act of filing the liens. See *Hogg*, 45 So.3d at 1007 (the leaking underground storage tanks was the cause of the plaintiffs' injuries *rather than the failure to contain or remediate*). Accordingly, because GSSI did not file its reconventional demand until more than two years after the liens were filed, its LUTPA claim was prescribed. We find no error in the trial court's dismissal of GSSI's reconventional demand on this basis. Therefore, we deny the answer to appeal filed by GSSI

## CONCLUSION

For the reasons assigned, we hereby reverse the portions of the December 9, 2020 judgment denying AT-PAC's claim for unpaid equipment rentals and ordering AT-PAC to pay $59,876.63 to GSSI. The judgment of the trial court is affirmed in all other respects. It is further ordered that this matter be remanded to the trial court for the trial court to determine any damages AT-PAC is entitled to receive from GSSI, including unpaid equipment rentals for the entire period GSSI had possession of the equipment without paying rent, both before and after the dissolved sale. All costs of this appeal are assessed to GSSI.[5]

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS. MOTION TO CORRECT DENIED. ANSWER TO APPEAL DENIED.**

---

[5] The parties filed a joint motion to correct the record on appeal. In view of our remand of this matter to the trial court for a determination of damages, we deny the motion as moot since the exhibit in question, which according to the motion consists of invoices sent to GSSI, is relevant principally to the issue of damages.

11

STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

2021 CA 0438

ATLANTIC PACIFIC EQUIPMENT, INC.

VERSUS


GULF SOUTH SERVICES, INC. F/K/A GULF SOUTH SCAFFOLDING, INC.

**Holdridge, J., agreeing in part and dissenting in part**

I agree that the trial court's judgment denying AT-PAC's claim for unpaid equipment rentals accruing prior to the sale of the equipment and ordering AT-PAC to pay $59,876.63 to GSSI should be reversed. However, I disagree with the opinion insofar as it dissolves the sale and holds that AT-PAC has a claim for additional rentals accruing after the sale of the equipment. It is undisputed in this case that a sale occurred, pursuant to which ownership of the equipment transferred to GSSI. AT-PAC has no claim for any rental after the date of the sale since it no longer owned the equipment. The only amount that AT-PAC is entitled to receive after the validly confected sale was entered into is the agreed upon amount of $1,580,991.65. GSSI's failure to pay the purchase price constituted a breach of the contract of sale, entitling AT-PAC to damages arising from that breach. AT-PAC's claim for damages for breach of the contract of sale should be offset by the amount of the payments GSSI made to AT-PAC after the sale was perfected, $105,000.00. Additionally, because GSSI voluntarily returned the equipment to AT-PAC, GSSI should receive a credit against the purchase price for the total value of the equipment voluntarily relinquished to AT-PAC in accordance with the agreement of the parties.

The sale agreement was reached by the negotiations between two sophisticated parties and to attempt to undue their agreement would lead to unfair and inequitable consequences. Therefore, I would remand the case to the trial court for a determination of the accrued rentals AT-PAC was owed prior to the sale, and the amount, if any, which may be due to either party in accordance with the binding sales agreement which they entered into in March of 2017.