PETTIGREW, J.
 

 |2In this case, Ricky Vincent d/b/a Tree Surgery by Ricky Vincent (“Vincent”) challenges the trial court’s judgment granting summary judgment in favor of Scottsdale Insurance Company (“Scottsdale”) and dismissing his claims for damages. For the reasons that follow, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 This matter arises in connection with a lawsuit filed by plaintiff, All Crane Rental of Georgia, Inc. (“All Crane”), against defendant, Vincent. All Crane alleged that on September 30, 2005, Vincent entered into a rental contract with All Crane for the use of a Manitex 22101 C 21-Ton/Mack CL713 (“the crane”) in his tree-trimming business. All Crane asserted that Vincent “contractually agreed that any damage occurring while [the crane] was in his care, custody and control was his responsibility.” All Grane further alleged that the crane was “damaged and repaired” while Vincent had “care, custody and control” of it and that Vincent had failed to pay several months of rental fees.
 

 Vincent answered All Crane’s petition, generally denying the allegations, and filed a cross-claim, naming Williams Insurance Agency, Inc. (“Williams”), Burns & Wilcox, Ltd. (“Burns & Wilcox”), Certain Underwriters at Lloyd’s, London (“Underwriters”), and Scottsdale as defendants.
 
 [1]
 
 In said cross-claim, Vincent alleged that because of the way Williams “wrote up the insurance certificates, it is quite possible that [Scottsdale] has an interest in this litigation and out of an abundance [of caution] is hereby named as a defendant.” In response to the cross-claim, Scottsdale filed a peremptory exception raising the objection of no cause of action and a dilatory exception raising the objection of vagueness and ambiguity. After a hearing on the peremptory exception raising the objection of no cause of action, the court sustained the exception and ordered Vincent to amend his petition within fifteen days.
 

 |3On September 25, 2007, Vincent filed an amended petition for damages alleging as follows:
 

 
 *1026
 
 [Scottsdale] is liable unto third party-plaintiff, [Vincent] for coverage as an insurer. On the Certificate of Liability issued by [Williams,] defendant [Scottsdale] is listed as the insurer on the inland marine policy. This policy covered, according to the Acord 25, physical damage on equipment (Manitex 22101C21 Ton Crane) that included boom, jib and overload. The time period of the effective date of policy was October 3, 2005 to January 3, 2006.
 

 Scottsdale filed a motion for summary judgment on June 3, 2008, alleging that there were no genuine issues of material fact as to Vincent’s claims against Scottsdale and that it was entitled to summary judgment as a matter of law. Scottsdale argued that the policy it issued to Vincent, Policy No. CLS1176939, provided commercial general liability (“CGL”) coverage for the period from October 5, 2005 through October 5, 2006. Scottsdale maintained that the claims made by Vincent were not covered by this policy as it specifically excluded coverage for property that Vincent owns or leases, or property that is in his care, custody or control.
 

 The matter was heard by the trial court on September 22, 2008, at which time the trial court granted summary judgment in favor of Scottsdale. On September 14, 2009, the trial court rendered judgment granting Scottsdale’s motion for summary judgment and dismissing, with prejudice, Vincent’s claims against Scottsdale.
 
 [2]
 
 The trial court found that the insurance policy in question provided no coverage for the loss sustained by Vincent and, therefore, Scottsdale had no obligation to defend Vincent. It is from this judgment that Vincent has appealed, assigning the following specifications of error:
 

 1. The trial court was clearly wrong, when it determined that the insurance binder issued to [Vincent], on 10-6-05, which describes [Scottsdale] as the principal to an “inland marine policy” designated as policy no 6051M10/03, and specifically covering “Boom Jib and overload,” was somehow meant to describe “a policy issued by [Underwriters]”^]
 

 |42. The trial court erred when it granted [Scottsdale’s] motion for summary judgment, finding that no genuine issue of material fact existed on the issue of insurance coverage on behalf of [Vincent];
 

 3. The trial court erred, when it failed to apply the law of [principal] and agent, and hold Scottsdale liable as insurer to [Vincent], based on the insurance binder ALONE[;]
 

 4. The trial court erred by not finding that
 
 in addition
 
 to the insurance binder, [Scottsdale] was liable to indemnify [Vincent] under the terms and provisions of a [CGL] policy, which issued long after the damages which form as a basis for this lawsuit occurred;
 

 5. The trial court erred when it failed to order [Scottsdale] to provide a defense to [Vincent], to pay for past attorney expenses paid by their client [Vincent].
 

 
 *1027
 
 SUMMARY JUDGMENT
 

 A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact.
 
 Gonzales v. Kissner,
 
 20082154, p. 4 (La.App. 1 Cir. 9/11/09), 24 So.3d 214, 217. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. La.Code Civ. P. Art. 966(B), Summary judgment is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ. P. art. 966(A)(2);
 
 Aucoin v. Rochel,
 
 2008-1180, p. 5 (La.App. 1 Cir. 12/23/08), 5 So.3d 197, 200,
 
 writ denied,
 
 2009-0122 (La.3/27/09), 5 So.3d 143.
 

 On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require that all essential elements of the adverse party’s claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of 15material fact, and the mover is entitled to summary judgment. La.Code Civ. P. art. 966(C)(2);
 
 Robles v. ExxonMobile,
 
 2002-0854, p. 4 (La.App. 1 Cir. 3/28/03), 844 So.2d 339, 341.
 

 In ruling on a motion for summary judgment, the trial court’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact.
 
 Guardia v. Lakeview Regional Medical Center,
 
 2008-1369, p. 3 (La.App. 1 Cir. 5/8/09), 13 So.3d 625, 628. A trial court cannot make credibility decisions on a motion for summary judgment.
 
 Monterrey Center, LLC v. Education Partners, Inc.,
 
 2008-0734, p. 10 (La.App. 1 Cir. 12/23/08), 5 So.3d 225, 232. In deciding a motion for summary judgment, the trial court must assume that all of the witnesses are credible.
 
 Independent Fire Ins. Co. v. Sunbeam Corp.,
 
 99-2181, pp. 16-17 (La.2/29/00), 755 So.2d 226, 236. Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor.
 
 Willis v. Medders,
 
 2000-2507, p. 2 (La.12/8/00), 775 So.2d 1049, 1050.
 

 Appellate courts review evidence
 
 de novo
 
 under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate.
 
 Boudreaux v. Vankerkhove,
 
 2007-2555, p. 5 (La.App. 1 Cir. 8/11/08), 993 So.2d 725, 729-730. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law.
 
 Ernest v. Petroleum Service Corp.,
 
 2002-2482, p. 3 (La.App. 1 Cir. 11/19/03), 868 So.2d 96, 97,
 
 writ denied,
 
 2003-3439 (La.2/20/04), 866 So.2d 830. The issue of whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can be resolved properly within the framework of a motion for summary judgment.
 
 Dixon v. Direct General Ins.
 
 
 *1028
 

 Co. of Louisiana,
 
 2008-0907, p. 4 (La.App. 1 Cir. 3/27/09), 12 So.3d 357, 360. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no treasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded.
 
 Halphen v. Borja,
 
 2006-1465, p. 3 (La.App. 1 Cir. 5/4/07), 961 So.2d 1201, 1204,
 
 writ denied,
 
 2007-1198 (La.9/21/07), 964 So.2d 338. An insurer seeking to avoid coverage through summary judgment must prove some provision or exclusion applies to preclude coverage.
 
 Henly v. Phillips Abita Lumber Co., Inc.,
 
 2006-1856, p. 4 (La.App. 1 Cir. 10/3/07), 971 So.2d 1104, 1108.
 

 INSURANCE POLICY INTERPRETATION
 

 An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code.
 
 Lewis v. Jabbar,
 
 2008-1051 p. 5 (La.App. 1 Cir. 1/12/09), 5 So.3d 250, 255. The judicial responsibility in interpreting insurance contracts is to determine the parties’ common intent.
 
 See
 
 La. Civ.Code art. 2045. Words and phrases used in a policy are to be construed using their plain, ordinary, and generally prevailing meaning, unless the words have acquired a technical meaning.
 
 See
 
 La. Civ.Code art. 2047. Where the language in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced as written.
 
 See
 
 La. Civ.Code art. 2046. The court should not strain to find ambiguity where none exists.
 
 Strickland v. State Farm Ins. Cos.,
 
 607 So.2d 769, 772 (La.App. 1 Cir.1992). Whether a contract is ambiguous is a question of law.
 
 Id.
 

 DISCUSSION
 

 The crux of Vincent’s appeal is that not only does the CGL policy issued by Scottsdale provide coverage for the damages at issue, but the “Certificate Of Liability Insurance,” issued on October 6, 2005, by Williams as an agent for Scottsdale, is the equivalent of a binder and operates to provide coverage. Thus, Vincent maintains, the trial court erred in failing to order Scottsdale to provide Vincent with a defense. We find no merit to Vincent’s arguments on appeal.
 

 |7In support of its motion for summary judgment below, Scottsdale submitted into evidence a copy of the “Certificate Of Liability Insurance,” arguing that the certificate did not create coverage under its policy. According to the certificate, there were allegedly two policies of insurance issued by Scottsdale, a CGL policy effective from 10/5/05 to 10/5/06, and an inland marine policy effective from 10/3/05 to 1/3/06. The following description is given as to the coverage provided: “GENERAL LIABILITY INCLUDES ALL CRANE RENTAL OF GEORGIA, INC. AS AN ADDITIONAL INSURED. INLAND MARINE INCLUDES LOSS PAYEE IN FAVOR OF ALL CRANE RENTAL OF GEORGIA, INC. INLAND MARINE COVERS PHYSICAL DAMAGE ON EQUIPMENT THAT INCLUDES BOOM, JIB AND OVERLOAD.” The only insurer listed on the certificate is Scottsdale. Citing La. R.S. 22:881
 
 [3]
 
 and
 
 Citgo Petroleum Corp. v. Yeargin, Inc.,
 
 95-1574 (La.App. 3 Cir. 2/19/97), 690 So.2d 154,
 
 writs denied,
 
 97-1223, 97-1245 (La.9/19/97), 701 So.2d 169, 170, Scottsdale
 
 *1029
 
 maintained that the certificate failed to meet the requirements of La. R.S. 22:881 and thus could not be considered in determining whether it modified the terms of coverage afforded by its CGL policy.
 

 At the outset, we note that a certificate of insurance is not the same as a binder. A binder is used to bind insurance temporarily pending the issuance of the policy. No binder shall be valid beyond the issuance of the policy as to which it was given. La. R.S. 22:870.
 
 [4]
 
 Thus, binders are authorized by law. Although a binder is sufficient to evidence a contract, it does not stand independent from the policy.
 
 Donaldson v. United Community Ins. Co.,
 
 98-1187, p. 11 (La.App. 3 Cir. 2/10/99), 741 So.2d 676, 683,
 
 writ denied,
 
 99-0727 (La.5/7/99), 740 So.2d 1285. A binder is subject to the conditions of the policy contemplated.
 
 Pigron v. Allstate Ins. Co.,
 
 2007-641, p. 6 (La.App. 3 Cir. 12/19/07), 972 So.2d 1269, 1273.
 

 A binder is not an insurance policy, but is generally taken to be a contract providing for interim insurance effective as of the date of the application and terminating at either completion or rejection of the principal policy.
 

 | ^Although a binder may be sketchy and informal in comparison with the policy contemplated for issuance and delivery in the future, it is a contract of insurance in praesenti, subject only to the conditions which it itself imposes. Generally, a binder contemplates a subsequent and more formal agreement, and by its nature incorporates the terms of the prospective policy whether those terms are prescribed by law or are part of the customary policy issued by the insurer. Thus, a binder is a written contract by a duly authorized agent of an insurance company recognizing liability on a forthcoming contract during negotiations for such contract, and assuming that a valid or legally operative binder has been executed, it is immaterial that a loss covered by the binder occurs before the formal policy of insurance is issued. A contract of temporary insurance is binding upon the insurer even though, after an accident, the insured refuses to take the policy and pay the premium as agreed. [Footnotes omitted.]
 

 Lee R. Russ and Thomas F. Segalla, 1A Couch on Insurance 3d, § 13:1 (1997) (“Couch on Insurance 3d”). To the contrary, the jurisprudence has consistently held that a certificate of insurance is typically issued for informational purposes alone and cannot modify the terms of coverage provided in an insurance policy.
 

 In
 
 Citgo,
 
 the court was asked to determine whether a certificate of insurance issued by a policyholder to an additional insured, which purported to extend, modify or limit coverage, was binding on the original insurer.
 
 Citgo,
 
 95-1574 at 10-13, 690 So.2d at 162-163. The certificate contained a disclaimer that it was issued solely for informational purposes and that it did “not amend, extend or alter” the policy’s coverage.
 
 Citgo,
 
 95-1574 at 11, 690 So.2d at 162.
 

 The court looked to the provisions of La. R.S. 22:881 for the scope of its inquiry: “Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the
 
 *1030
 
 policy.”
 
 Citgo,
 
 95-1574 at 13, 690 So.2d at 163. The court concluded:
 

 [La. R.S. 22:881,] by its clear wording, limits our inquiry in this case solely to the meaning of the terms and conditions of the [original] policy and “any rider, endorsement or application.” A certificate of insurance is not a “rider, endorsement, or application.” We cannot examine the certificate for purposes of determining if it modifies the terms of coverage because, by operation of this statute, the certificate cannot amplify, extend or modify coverage.
 

 Citgo,
 
 95-1574 at 13, 690 So.2d at 164. The court noted further that even if applicable law allowed it to consider the language of the certificate, the certificate’s disclaimer was |9clear and unambiguous that it did not “amend, extend or alter” the coverage afforded under the policy and that it was issued for informational purposes only.
 
 Id. Cf. Ferguson v. Plummer’s Towing & Recovery Inc.,
 
 98-2894, pp. 5-6 (La.App. 1 Cir. 2/18/00), 753 So.2d 398, 401 (citing La. R.S. 10:1-307
 
 [5]
 
 and holding that a certificate of insurance is prima facie evidence of the genuineness of the facts stated therein if the certificate was issued between the parties to legal action but that a third party may not rely on the certificate to “change the coverage provided” by an insurance policy).
 

 Similarly, the “Certificate Of Liability Insurance” issued in this case contains the exact disclaimer as the one in the
 
 Citgo
 
 case: “THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.” While in an action by Vincent against Williams in connection with the certificate of insurance, the certificate would be prima facie evidence of its authenticity, with respect to Scottsdale, the language in the certificate does not operate to change the coverage provided in the CGL policy issued by Scottsdale.
 
 See Ferguson,
 
 98-2894 at 5-6, 753 So.2d at 401. Accordingly, we must look only to the policy in question to determine whether Vincent’s claims were covered by the CGL policy, thus requiring Scottsdale to provide Vincent with a defense.
 

 The “Insuring Agreement” of the CGL policy provides as follows:
 

 We will pay those sums that the insured becomes legally obligated to pay as damages because of “bodily injury” or “property damage” to which this insurance applies. We will have the right and duty to defend the insured against any “suit” seeking those damages. However, we will have no duty to defend the insured against any “suit” seeking damages for “bodily injury” or “property damage” to which this insurance does not apply. We may, at our discretion, investigate any “occurrence” and settle any claim or “suit” that may result.
 

 | l0Fur therm ore, the CGL policy contains the following exclusions:
 

 2. Exclusions
 

 This insurance does not apply to:
 

 [[Image here]]
 

 j. Damage To Property
 

 “Property damage” to:
 

 (1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of
 
 *1031
 
 injury to a person or damage to another’s property;
 

 [[Image here]]
 

 (4) Personal property in the care, custody or control of the insured!.]
 

 In moving for summary judgment, Scottsdale argued that its policy was a CGL policy that did not provide commercial inland marine coverage. Scottsdale further asserted that according to Exclusions (j)(l) and (j)(4), the policy specifically excluded coverage for property that Vincent owns or leases, or property that is in his care, custody or control. Thus, Scottsdale maintained, because there was no dispute that the crane was leased to Vincent at the time that it sustained damages, these exclusions clearly barred coverage for Vincent’s claims.
 

 Scottsdale’s policy is a CGL policy. Such policies are designed to protect the insured against losses to third parties arising out of the operation of the insured’s business. 9A Couch on Insurance 3d, § 129:2. The damages sought by All Crane do not fit within the coverage of a CGL policy. Furthermore, based on the clear and unambiguous language of the exclusions in the Scottsdale CGL policy, we agree with Scottsdale that this policy afforded no coverage to Vincent for the damages at issue herein.
 

 As alleged by All Crane in its petition for damages, the crane that was damaged was leased to Vincent at all pertinent times hereto. There is no claim that Vincent’s use of the crane caused any damages to third party property. Thus, it follows that the |n exclusion for damage to property rented by Vincent clearly and unambiguously bars coverage for the claims asserted. Moreover, it is asserted in the petition for damages that the crane was damaged while in the care, custody and control of Vincent. Therefore, the “care, custody and control” exclusion clearly and unambiguously operates to bar coverage as well. Further, we note that in opposition to Scottsdale’s motion for summary judgment, Vincent failed to produce factual support sufficient to satisfy his evi-dentiary burden at trial; i.e., that the CGL policy issued by Scottsdale afforded him coverage for the damage to the crane such that Scottsdale was required to' provide Vincent with a defense. Accordingly, there was no genuine issue of material fact. Summary judgment in favor of Scottsdale was warranted.
 

 CONCLUSION
 

 For the above and foregoing reasons, we find no error in the trial court’s ruling granting summary judgment in favor of Scottsdale and dismissing, with prejudice, Vincent’s claims against Scottsdale. Thus, we affirm the judgment of the trial court. All costs associated with this appeal are assessed against defendant-appellant, Ricky Vincent d/b/a Tree Surgery by Ricky Vincent.
 

 AFFIRMED.
 

 [1]
 

 . By order of the court dated September 10, 2007, Vincent’s claims against Burns & Wilcox were dismissed, with prejudice. Subsequently, Underwriters appeared before the court, unopposed, on November 26, 2007, on a motion for summary judgment regarding Vincent's claims. The court granted summary judgment in favor of Underwriters, thereby dismissing Vincent’s claims against Underwriters, with prejudice.
 

 [2]
 

 . The original judgment in this case, which was rendered on October 16, 2008, formed the basis of a prior appeal by Vincent. However, because the October 16,
 
 2008
 
 judgment did not include appropriate decretal language, this court dismissed Vincent’s previous appeal and remanded the matter to the trial court for further proceedings.
 
 All Crane Rental of Georgia, Inc. v. Ricky Vincent,
 
 2009-0118, 17 So.3d 518, 2009 WL 3241843 (La.App. 1 Cir. 9/11/09) (unpublished). Subsequently, on September 14, 2009, the trial court rendered a valid final judgment, which forms the basis of the appeal currently before us.
 

 [3]
 

 . This statute was renumbered from La. R.S. 22:654 by Acts 2008, No. 415, § 1, eff. Jan. l, 2009.
 

 [4]
 

 . This statute was renumbered from La. R.S. 22:631 by Acts 2008, No. 415, § 1, eff. Jan. l, 2009.
 

 [5]
 

 . This statute was renumbered from La. R.S. 10:1-202 by Acts 2006, No. 533, § 1.