CRAIN, J.
12In this suit to enforce a lease, the defendants, First Guaranty Bank and Capital One, N.A., appeal a partial summary judgment rendered in favor of the plaintiffs, Charles A. Ciolino and Gertrude K. Ciolino. We affirm.
FACTS AND PROCEDURAL HISTORY
The property at issue was leased by Mike and Rose Ciolino to M.D. Evans pursuant to a lease agreement dated September 7, 1973. The lease contained a fifty-year term that will expire on September 30, 2023. A summary of the lease was recorded in the public land records on December 10, 1973. Using the lease as security, the original lessee secured financing from First Guaranty Bank and Hibernia National Bank in New Orleans to improve the property as a parking lot for a motel facility located on an adjacent tract being developed by the same party.[1] Both the lease and the property have been the subject of transfers over the last four decades, and the rights and obligations that flow from those transfers form the crux of the issues presented by this appeal.
The lease permitted assignments but provided that in “the event that Lessee should assign this Lease, Lessee shall not be personally released from any responsibilities contained in this lease but shall remain completely liable for all of the terms and conditions hereof.” On January 5, 1977, the original lessee executed a dation en paiement that included an assignment of the lease to the banks. In connection with that transaction, the original lessee and the banks executed an act of assignment dated February 20, 1977, whereby First Guaranty acquired a three-fifths interest in the lease and | ¡¡Hibernia acquired a two-fifths interest. The banks agreed that they were “binding themselves to perform all of the conditions and obligations of said lease in the respective proportions thereof as though original lessees under the lease.” Mike and Rose Ciolino appeared as intervenors in that assignment to consent to the transaction and to expressly release the original lessee from any further liability under the lease. Approximately seven months later, the banks transferred the lease to another assignee on September 14, 1977. Mike and Rose Ciolino did not appear in that act and did not consent or agree to the transfer.
On December 30, 1987, Mike and Rose Ciolino donated the property to their son, Charles Ciolino, and his wife, Gertrude, by an act of donation that was recorded in the public land records shortly after it was signed. Charles and Gertrude Ciolino received rental payments pursuant to the lease until February of 2010 when they *689 received a letter forwarded on behalf of the current lessee advising that it would be unable to continue to honor its lease obligations due to the decline of the business on the adjacent tract. The motel subsequently closed, and the building is now abandoned.
Charles and Gertrude Ciolino (collectively, the “Ciolinos”) filed suit against the banks for the unpaid rent accruing after February of 2010 based upon allegations that the banks remain liable for the rental obligation pursuant to the assumption of liability in the act of assignment whereby they acquired the lease. After the banks filed answers denying any liability and asserting third-party demands against subsequent assignees of the lease, the Ciolinos moved for a partial summary judgment against the banks for the unpaid rent accruing through the date of the motion and for an order requiring the banks to comply with all terms and conditions of the lease, including the payment of future rent. The motion was supported by the |4CioIinos’ affidavits and related documents establishing the history of the relevant transactions involving the lease and the property and the default of the rental obligation.
The banks countered that the Ciolinos had released them from liability in an act of acknowledgment signed by the Ciolinos on December 3, 2001 in connection with another assignment of the lease. In that document, the Ciolinos confirmed information about the status of the lease and the holders of the lease at that time, referred to in the document as the “Current Lessees.” The banks assert that the following statement in that act constituted a novation that released them from liability under the lease:
The Original/Current Lessors are the only persons with any interest in the Lease and there are no other persons (including firms, corporations, associations or any other legal entities) that have any right or interest in the Lease, other than the Current Lessees.
An officer of First Guaranty, Stanley M. Dameran, signed the act of acknowledgment on behalf of that bank, who appeared as an intervenor to consent to the transfer and acknowledge the separate ownership of the improvements on the property. Dameran’s affidavit offered in opposition to the motion for summary judgment provided that “First Guaranty Bank’s only intent [in executing the document] was to acknowledge that it previously had an interest in the property at issue, and that First Guaranty Bank no longer had any interest in said property and no longer held any security interest in the property.” [2]
The banks also argued that the Ciolinos never acquired any rights in the lease and therefore lacked contractual privity with the banks. Although | sthe banks recognized that the Ciolinos acquired the property subject to the lease through the act of donation, the banks argued that the lease was a personal right that was not transferred by the donation because it was silent as to the lease. Finally, the banks argued that the Ciolinos failed to mitigate their damages by not re-leasing the property.
The Ciolinos responded by asserting that the act of acknowledgment did not contain any language establishing a “clear *690 and unequivocal” release of the banks by a novation. As to their privity of contract, the Ciolinos argued that the language of act of donation was sufficiently broad to include their vendors’ interest in the lease. Alternatively, the Ciolinos maintained that the lease was a heritable right and presented evidence that Charles Ciolino was the only heir of Mike Ciolino, one of the original lessors, who died in 1996. In response to the claim that they failed to mitigate their damages, the Ciolinos asserted that the condition of the property, a parking lot serving a vacant motel on adjacent property, limits the market for releasing it, and that the banks did not meet their burden of proof for that defense.
After taking the matter under advisement, the trial court issued written reasons for judgment finding that the language in the act of acknowledgment was not a novation because “[o]ne would be constrained to conclude the cited language evidenced an intent to release any prior lessee from any obligation created under the 1973 lease.” Noting that the 1977 assignment whereby the banks acquired their interest in the lease contained specific language releasing the original lessee from any further liability under the lease, the trial court observed, “Surely, two sophisticated financial lending institutions which had previously entered into an Assignment specifically releasing a lessee would have included similar specific language [in the act Rof acknowledgment] if their intent was to be released from any contractual obligations as lessees from the 1973 lease.” The trial court found no merit in the lack of privity argument and did not address the defense of failure to mitigate damages.
A judgment was signed thereafter in favor of the Ciolinos and against the banks that quantified and awarded unpaid rental amounts for the lease years prior to judgment and ordered the banks to specifically perform under the terms of the lease by paying rent and other sums due for the remainder of the lease term. The banks suspensively appealed the judgment.
LAW AND ANALYSIS
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. All Crane Rental of Georgia, Inc. v. Vincent, 10-0116 (La.App. 1 Cir. 9/10/10), 47 So.3d 1024, 1027, writ denied, 10-2227 (La.11/19/10), 49 So.3d 387. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ. Pro. art. 966B(2).[3] Summary judgment is favored and designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ. Pro. art. 966A(2).
The burden of proof is on the mover; however, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion, the mover’s burden does not require that all essential elements of the adverse party’s claim, action, or defense be negated. La. Code Civ. Pro. art. 966C(2). Instead, the mover must point out to the court that there is an 17absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentia-ry burden of proof at trial. If the adverse *691 party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment as a matter of law. La.Code Civ. Pro. art. 966C(2); All Crane, 47 So.3d at 1027.
Appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether a summary judgment is appropriate. All Crane, 47 So.3d at 1027. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. All Crane, 47 So.3d at 1027.
The banks assert multiple assignments of error, including the trial court’s failure to find an issue of fact regarding whether a novation occurred, the trial court’s finding that the Ciolinos have contractual privity and therefore a right to enforce the lease, a purported finding by the trial court that the lease was a real right, the granting of summary judgment without considering the application of equitable es-toppel, and the granting of the summary judgment where the Ciolinos presented no evidence of any steps to mitigate their alleged damages. We find no merit in the assignments of error.
A. Novation
Novation is the extinguishment of an existing obligation by the substitution of a new one. La. Civ.Code art. 1879. The banks claim a novation occurred when the Ciolinos acknowledged that only the “Current ¡^Lessees ... have any right or interest in the Lease.” This claim is governed by Louisiana Civil Code article 1882, which provides:
Novation takes place when a new obligor is substituted for a prior obligor who is discharged by the obligee. In that case, the novation is accomplished even without the consent of the prior obligor, unless he had an interest in performing the obligation himself.
However, under Article 1886, a delegation of performance by an obligor to a third person effects a novation only when the obligee expressly discharges the original obligor. The determining factor is the intention of the parties. GE Commercial Finance Business Property Corp. v. Louisiana Hospital Center, L.L.C., 10-1838 (La.App. 1 Cir. 6/10/11), 69 So.3d 649, 656. The intention to extinguish the original obligation must be clear and unequivocal. La. Civ.Code art. 1880; GE Commercial Finance, 69 So.3d at 656. Novation may not be presumed, and the burden of proving novation falls on the party who seeks its protection. La. Civ.Code art. 1880; Pike Burden Printing, Inc. v. Pike Burden, Inc., 396 So.2d 361, 366 (La.App. 1 Cir.1981). This is so because a novation results in the discharge of a debtor, and the court will not presume that a creditor in the course of his business affairs released a debtor; creditors are not in the business of releasing debtors who have not paid. Pike Burden Printing, 396 So.2d at 366. The intention to novate may be shown by the character of the transaction, the facts and circumstances surrounding it, as well as by the terms of the agreement itself. GE Commercial Finance, 69 So.3d at 656.
The banks rely on the language in the act of acknowledgment and argue that it reflects the parties’ intent to novate. We find the language of the act of acknowledgment does not establish a clear and unequivocal intention to extinguish the banks’ liability under the lease. The act of acknowledgment does not state that another party has been substituted for |athe banks, that the banks have been discharged from the lease, or that the banks’ *692 obligations have otherwise been extinguished as a result of the assignment that is the subject of the acknowledgment. The language merely provides that the “Current Lessees” were the only parties with any “right or interest” in the lease. That provision contains no express release of the banks nor does it represent that the “Current Lessees” were the only parties obligated by the lease. Rather, the acknowledgment confirms that the Current Lessees, as the assignees of the lease at that time, and the Ciolinos, as the owners, were the only parties who had any rights under the lease. The banks had previously assigned their rights under the lease, but that divestiture of their rights did not terminate their obligations under the lease absent an express release from the lessors, a result that is mandated by the terms of the lease and Louisiana Civil Code articles 1821 (assumption of an obligor’s debt by a third party does not release obligor) and 1886 (delegation of performance to a third person effects a novation only when the obligee expressly discharges original obli-gor).
The banks argue that the court is required to consider facts and circumstances surrounding the execution of the act of acknowledgment to determine whether the parties intended a novation and that such a determination involves issues of material facts. The evidence before the court fails to present any such factual issues. In their affidavits, the Ciolinos deny that they released or intended to release the banks from their obligations under the lease when they signed the act of acknowledgment. The defendants rely on Dameran’s affidavit, but he does not claim or suggest in his affidavit that the parties intended a novation in the act of acknowledgment. Rather, Dameran attested that First Guaranty’s “only intent was to acknowledge that it previously had an interest in the property at |inissue and that First Guaranty no longer had any interest in the said property.” He further confirmed that “he had no familiarity with the document or any discussions with anyone concerning the document or lease” prior to the date he signed the acknowledgment. These statements do not contradict the Ciolinos’ representations that they did not intend to release the banks from liability by signing the document.
As the trial court observed, if the parties had intended a release of the banks to result from the act of acknowledgment, the instrument would have contained language similar to that used in the assignment whereby the banks acquired their interests in the lease, which contained a clear and unequivocal “release” by the lessors of the prior lessees “from any obligations or liability under said lease.” No similar language appears in the act of acknowledgment relied upon by the banks as releasing them from their obligations under the lease.
We find that the terms and character of the agreement, as well as the relevant uncontested facts and circumstances surrounding it, do not reflect a clear and unequivocal intent by the Ciolinos to release the banks from liability through a novation in the act of acknowledgment. Therefore, the banks failed to produce factual evidence sufficient to establish that they will be able to satisfy their evidentia-ry burden of proof at trial to prove a novation, and the trial court did not err in rejecting that defense. See La. Civ.Code art. 1880; City of Donaldsonville v. Thiac, 542 So.2d 1111, 1116 (La.App. 1 Cir.1989) (original lessee failed to prove novation where evidence did not show clear and unequivocal intent by lessor to release original lessee by accepting rent from new lessee); Bradford v. Onshore Pipeline Construction Company, Inc., 37,421 (La.App. 2 Cir. 8/22/03), 853 So.2d. 756, 767, *693 writ denied, 03-2887 (La.1/9/04), 862 So.2d 986 (original! ^obligor failed to prove novation resulted from assignment of gas purchase contract in absence of evidence that obligee released or discharged original ob-ligor); Bayou Acceptance Corp. v. Superior Hydraulics, Inc., 446 So.2d 558, 561 (La.App. 3 Cir.1984) (original lessee failed to prove novation where lessor acknowledged assignment of the lease but never explicitly released original lessee from lease obligations). This assignment of error is without merit.
B. Right to Enforce Lease
The banks assert that the Ciolinos do not have the right to enforce the lease because they are not parties to the lease and did not acquire any rights in the lease through the donation or any other transaction. Although the banks recognize that the original lessors donated the leased property to the Ciolinos, the banks contend that the original lessors’ rights in the lease were personal rights that were not transferred with the property because they were not identified in the act of donation.
The banks are correct that a lease of immovable property is a personal right and not a real right. See Eagle Pipe and Supply, Inc. v. Amerada Hess Corp., 10-2267 (La.10/25/11), 79 So.3d 246, 262; Prados v. South Central Bell Telephone Co., 329 So.2d 744, 749 (La.1975) (on rehearing). However, we find that the classification of the right is not dispositive of whether the Ciolinos can collect rent from parties liable under the lease.[4]
The rights and obligations that flow from a transfer of immovable property that is the subject of a lease are addressed by a number of articles in the Louisiana Civil Code and a revised statute. Pursuant to Article 2711, the transfer of the property does not terminate the lease unless the parties have l12agreed otherwise. However, the ability to enforce the lease against the transferee of the property, absent an assumption or acknowledgment of the lease by that party, turns on whether the lease was recorded prior to the transfer of the property. In that regard, Louisiana Revised Statute 9:2721C provides:
Anyone who acquires immovable property in this state ... which property is subject to a recorded lease agreement that is not divested by the acquisition, shall take the property subject to all of the provisions of the lease, including any provision for the payment of a commission to a leasing agent or other third party, provided that the lease was recorded prior to the recordation of the document which establishes the rights of the person who acquires the property....
Similarly, Louisiana Civil Code article 2681 mandates that a “lease of an immovable is not effective against third persons until filed for recordation in the manner prescribed by legislation,” and Article 3338 provides that the “rights and obligations established or created” by a lease of an immovable “are without effect as to a third person unless the instrument is registered by recording it in the appropriate mortgage or conveyance records.” In contrast, if the lease is not recorded, Article 2712 declares that a “third person who acquires an immovable that is subject to an unrecorded lease is not bound by the lease.”
In Prados the Louisiana Supreme Court summarized the law as follows:
In recent years, we have consistently classified predial leases as involving per *694 sonal rights, rather than real rights.... When, however, the lessor sells property during the term of a recorded lease, the purchaser in the absence of a contrary stipulation is bound by the obligations of the lessor.... In the absence of a contrary stipulation, the new owner is likewise entitled to the rent accruing subsequent to his acquisition[.]
Prados, 329 So.2d at 749 (citations omitted); see also Page v. City of Winnfield, 40,747 (La.App. 2 Cir. 3/10/06), 925 So.2d 683, 690 (holding [^that a purchaser of property subject to a recorded lease had the right to collect rent from the lessee).
According to Professor A.N. Yiannopou-los, the provisions of the Louisiana Civil Code governing lease derive from the French Civil Code which likewise provides that the acquirer of a thing subject to a lease assumes the position of the lessor and is subrogated to his rights and duties “for reasons of social and economic utility.” See 2 A.N. Yiannopoulos, Louisiana Civil Law Treatise, PropeHy, § 226 (4th ed.2001). With respect to the law of Louisiana, Professor Yiannopoulos explained:
The Code indicates that, although the acquirer of a thing subject to a lease is subrogated to the rights and duties of the former owner, the contract of lease generates personal rights. According to Article 2733 [now Article 2711], the acquirer is bound to respect the term of the lease and occupies vis-a-vis the lessee the same position as the former owner. He and his successors are entitled to collect the rent, and are bound to maintain the lessee in undisturbed enjoyment. But they are not bound by personal obligations that the former owner assumed with respect to the property, even vis-a-vis the lessee.
Yiannopoulos, at § 226 (citations omitted).
The social and economic utility of a transferee of immovable property being bound by a previously recorded lease while also having the right to collect rent is readily apparent. If the transferee is obligated by the lease to maintain the lessee in peaceful possession of the property, then it is reasonable that the transferee likewise have the corresponding right to receive the rent set forth in the lease.
The banks argue that Prados was limited by Eagle Pipe, wherein our supreme court characterized a statement in Prados as “widely misinterpreted.” However, a review of Eagle Pipe confirms that the court’s reference was to a statement made in another portion of the Prados opinion 114that has no application to the present case, while the court appeared to approve of the statements in Prados that are relevant to this case.
The Eagle Pipe court reviewed Prados at length and summarized the relevant portion of Prados as follows:
On original hearing, this court affirmed, finding the lease provisions imposed real obligations on the property which were consistent with the provisions of the Civil Code regarding a lessee’s obligation to restore property. Upon re-examination, the court found it had erroneously considered the matter in its original opinion as though the property had been sold during an existing lease. Under those circumstances, the new owner would have been bound to perform the obligations of the lessor stated in the lease in the absence of a contrary stipulation, and would have been entitled to receive the benefit of the obligations of the lessee (such as rent) from the time of his acquisition of the property.... Here, however, the lease between the former owner and Bell expired before the property was sold to the new owner, and the seller conveyed the property free of any lease.
*695 Eagle Pipe, 79 So.3d at 269-270 (citation omitted).
The court did not indicate any change of position in its analysis of the rent issue. The only portion of Prados that the Eagle Pipe court described as “widely misinterpreted” concerned the “subsequent purchaser rule,” a jurisprudential rule that holds that an owner of property has no right or actual interest in recovering from a third party for damage that was inflicted on the property before his purchase, in the absence of an assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted. Eagle Pipe, 79 So.3d at 254-255, 272. Prados suggested that that doctrine barred claims only for an “overt condition” of the property at the time of the sale, while Eagle Pipe extended the prohibition to claims for damages that are not apparent at the time of the sale. Eagle Pipe, 79 So.3d at 272, 275.
The subsequent purchaser rule is not applicable to the present case. This case does not involve previously inflicted property damage, but |1Binvolves a property owner’s ability to collect rent on an existing lease that was recorded prior to his acquisition of the property. The supreme court in Eagle Pipe reviewed the portion of Prados that confirmed that an owner under such circumstances has the right to collect rent and did not opine or otherwise suggest that that was no longer the law.
The banks also rely upon Official Revision Comments (b) and (c) of Article 2711 for the proposition that the transfer of the property, alone, does not vest the Ciolinos with the original lessors’ rights and obligations under the lease. Comment (c) provides that a “transferee does not, by virtue of the transfer alone, become the lessor and does not assume the lessor’s obligations ... [nor become] subrogated to the lessor’s rights.... ” This statement neglects to consider the legal consequences that flow from the recordation of the lease prior to the transfer of the property. Upon recordation of the lease, anyone who acquires the property thereafter “shall take the property subject to all of the provisions of the lease,” including the right to collect rent under the lease. See La. R.S. 9:2721C; La. Civ.Code arts. 2681, 2711, 3338(2); Prados, 329 So.2d at 749; City of Winnfield, 925 So.2d at 690. This statutory law of Louisiana, as interpreted by our courts, provides the controlling law to be. applied to the facts of this case. While comments to the Civil Code articles are helpful in determining legislative intent, they are not the law. See Arabie v. CITGO Petroleum Corp., 10-2605 (La.3/13/12), 89 So.3d 307, 312; see also La. Civ.Code art. 1.
The uncontested facts establish that the lease was executed on September 7, 1973; the lease contains a term that extends through September 30, 2023; and a summary of the lease was recorded in the public land |1firecords on December 10, 1973.[5] The lease was transferred to the banks by an assignment wherein the banks agreed they were bound “to perform all of the conditions and obligations of said lease in the respective proportions thereof as though original lessees under the lease.” The banks thereafter transferred the lease to another assignee; however, pursuant to the terms of the lease and Louisiana Civil *696 Code articles 1821 and 1886, the banks remained liable for the performance of all obligations under the lease, including the payment of the rent. Neither the original lessors nor the Ciolinos ever released the banks from that liability. The Ciolinos acquired ownership of the subject property on December 30, 1987. Under these circumstances, the Ciolinos have the right to collect rent from the banks in accordance with the terms and conditions of the lease. See La. R.S. 9:2721C; La. Civ.Code arts. 2681, 2711, 3.388(2); Prados, 329 So.2d at 749; City of Winnfield, 925 So.2d at 690. The trial court did not err in finding that the Ciolinos have the right to maintain this action against the banks.
In a final argument under this assignment of error, First Guaranty evokes a provision in the lease which it contends compels mandatory arbitration of any dispute under the lease. First Guaranty initially raised this defense in a dilatory exception; but the bank later voluntarily dismissed that exception, filed responsive pleadings that included third party demands against numerous parties, and engaged in discovery, all over the course of approximately twenty months leading to the hearing of the subject motion h7for summary judgment and without ever advancing the purported arbitration provision again until its brief filed with this court. Under these circumstances, we find that First Guaranty waived any right to arbitration that may be set forth in the lease. See Hospital Service District No. 3 of Parish of Lafourche v. Fidelity & Deposit Company of Maryland, 99-2773 (La.App. 1 Cir. 1/16/01), 809 So.2d 145, 149, writ denied, 01-0679 (La.4/27/01), 791 So.2d 639.[6]
C. Equitable Estoppel
The banks also argue that the trial court erred in granting the summary judgment without considering the application of equitable estoppel. They contend that the execution of the act of acknowledgment by the Ciolinos, wherein they acknowledge an assignment of the lease, together with their receipt of rent from subsequent assignees estopps the Ciolinos from now enforcing the banks’ obligation to pay rent under the lease. We find no error in the trial court’s rejection of this defense.[7]
Equitable estoppel is a jurisprudential doctrine involving the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. MB Industries, LLC v. CNA Insurance Co., 11-0303 (La. 10/25/11), 74 So.3d 1173, 1180. The party invoking the doctrine of equitable estoppel must prove the facts upon which the estop-pel is based and must establish all three elements of estoppel: (1) a representation by action or word; (2) justifiable reliance on the representation; and (3) a detrimen *697 tal change in one’s position because of the reliance. In re Ourso, 05-0543 (La.App. 1 Cir. 6/9/06), 938 So.2d 748, 753-54, writ denied, 06-2205 (La.11/17/06), 942 So.2d 542. Estoppel is not favored in our law, and any claim of estoppel must be examined carefully and strictly. May v. Harris Management Corp., 04-2657 (La.App. 1 Cir. 12/22/05), 928 So.2d 140,145.
The record contains no evidence that the banks made a “detrimental change” in their position in reliance upon a representation by the Ciolinos. The banks were obligated under the lease before and after the execution of the act of acknowledgment. They have identified no change, detrimental or otherwise, that was made in reliance upon that document. The same is true for any asserted reliance upon the Ciolinos’ receipt of rent from subsequent lessees. The trial court did not err by failing to apply the doctrine of equitable estoppel because an essential element, a change in one’s position to his detriment because of reliance, is totally lacking in this case. See Wilkinson v. Wilkinson, 323 So.2d 120,126 (La.1975).
D. Mitigation of Damages
In their final assignment of error, the banks assert that the trial court erred in granting the summary judgment because the Ciolinos failed to offer any proof that they mitigated their damages. Pursuant to Louisiana Civil Code article 2002, an obligee must make reasonable efforts to mitigate the damage caused by the obli-gor’s failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly 11flreduced. La. Civ.Code art, 2002. The scope of a party’s duty to mitigate depends on the particular facts of the individual case, and a party is not required to take actions which would likely prove unduly costly or futile. MB Industries, LLC, 74 So.3d at 1181.
Citing jurisprudence for the proposition that a lessor’s recovery is either, denied or reduced by the failure to make reasonable efforts to re-lease the premises after a default, the banks argue that the Ciolinos were not entitled to a summary judgment because they presented no evidence of efforts to re-lease the property.[8] However, the failure to mitigate damages is an affirmative defense, and the burden of proof is on the party asserting the defense. MB Industries, LLC, 74 So.3d at 1181. In opposition to the motion for summary judgment, the banks were obligated to produce factual support sufficient to establish that they will be able to satisfy their burden of proof at trial that the Ciolinos failed to make reasonable efforts to mitigate their damages together with proof of the amount of any reduction in the award resulting from that failure. La.Code of Civ. Pro. art. 966C(2). The banks did not offer any evidence in support of this defense. The record is silent as to whether any efforts were made to re-lease the property; or, equally important, whether any such efforts would have been unduly costly or futile given the unique nature of the property. The banks therefore failed to satisfy the burden of proof necessary to preclude a summary judgment based on this defense.
First Guaranty additionally contends that the Ciolinos are obligated to mitigate their damages by first pursuing recovery from the current lessee |20before *698 pursuing the banks. Under the terms of the lease and Article 1821, the banks, to the extent of their respective shares of the obligation, and the current lessee are soli-dary obligors for the rent. The law of mitigation of damages does not require that an obligee pursue recovery from one particular solidary obligor in preference to another. Rather, the Ciolinos have the right to enforce the lease against all parties liable thereunder. See La. Civ.Code arts. 1795,1800.[9]
CONCLUSION
For the reasons set forth herein, we affirm the trial court’s granting of a summary judgment in favor of Charles A. Ciol-ino and Gertrude K. Ciolino against First Guaranty Bank and Capital One, N.A. All costs of this appeal are assessed to First Guaranty Bank and Capital One, N.A.
AFFIRMED.
THERIOT, J., Dissents with reasons.
WELCH J., concurs without reasons.
GUIDRY, J., Dissents.

. The original lessee was M.D. Evans, who assigned the lease to 55 & 12, Inc., a company he directed as president. Evans and 55 & 12, Inc. are collectively referred to herein as the "original lessee.” Hibernia National Bank subsequently changed its name to Capital One, and First Guaranty Bank and Capital One are sometimes collectively referred to hereinafter as the "banks.”

. The Ciolinos filed a motion to strike Damer-an's affidavit, arguing that it contained opinions that were not based on personal knowledge. The trial court granted the motion, in part, “to the extent that the affidavit contains opinions;” however, the trial court did not specify which portions of the affidavit constituted opinions. The banks did not appeal that ruling.

. The summary judgment was signed on October 3, 2012 and is therefore governed by the version of Article 966 in effect after its amendment by Acts 2012, No. 257.

. The banks assigned as error the trial court’s purported finding that the lease was a real right; however, we find no merit in that assignment of error because the trial court’s written reasons and judgment do not express such a finding.

. The recordation of a summary or "extract” of the lease containing the essential terms was authorized by Louisiana Revised Statute 9:2721.1 (repealed by Acts 2005, No. 169). Section 9 of Acts 2005, No. 169 provides, in part, "Nothing in. this Act shall be deemed to diminish the effect of, or render ineffective, the recordation of any instrument that was filed, registered, or recorded in the conveyance or mortgage records of any parish before the effective date of this Act.” See now La. R.S. 9:2742.

. In light of our holding recognizing that the Ciolinos have a right of action to collect rent from the banks, we do not consider and express no opinion on the Ciolinos’ alternative arguments that the act of donation was sufficiently broad to expressly transfer the lease rights to them, or that Charles Ciolino, as the sole heir of Mike Ciolino, acquired the lease rights in accordance with the laws of succession. See La. Civ.Code arts. 888, 935, 937 and 938.

. The trial court's reasons and judgment were silent with respect to the defense of equitable estoppel, however silence in a judgment as to any issue that was placed before the trial court is deemed a rejection of the claim. Hayes v. Louisiana State Penitentiary, 06-0553 (La.App. 1 Cir. 8/15/07), 970 So.2d 547, 554 n. 9, writ denied, 07-2258 (La. 1/25/08), 973 So.2d 758.

. See American Leasing Company of Monroe, Inc. v. Lannon E. Miller & Son General Contracting, Inc., 493 So.2d 764, 765 (La.App. 2 Cir.1986); Dixie Services, L.L.C. v. R & B Falcon Drilling USA, Inc., 05-1212 (La.App. 4 Cir. 3/21/07), 955 So.2d 214, 219, writ denied, 07-0801 (La.6/1/07), 957 So.2d 182.

. Any satisfaction of the rental obligation by the banks will give rise to statutory rights of contribution from other solidary obligors under the lease, including the current lessee. See La. Civ.Code art. 1804.