CRAIN, J.
| ^Shannon Cason appeals a summary judgment dismissing her claims against Bethany World Prayer Center and its insurer, Houston Specialty Insurance Company. We affirm in part, reverse in part, and remand.
FACTS
Shannon Cason instituted this suit for damages for injuries sustained when her vehicle was rear-ended by a vehicle driven by Corey Saniford. Saniford was a participant in Bethany World Prayer Center’s 220i internship program and was driving to a high school prayer meeting when the accident occurred. Cason named Bethany and Houston as defendants, claiming that Bethany was vicariously liable for the acts of Saniford under the doctrine of respon-deat superior. By a second amending petition, Cason alleged that Saniford was an insured under Houston’s policy and that Bethany was an insured under Houston’s policy for the acts of Saniford on the date of the accident. Bethany and Houston moved for summary judgment on the basis that no master-servant relationship existed between Bethany and Saniford such that *11 Bethany would be vicariously liable for Saniford’s actions. The trial court granted the motion for summary judgment and dismissed Bethany and Houston from the suit. This appeal followed.
DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. All Crane Rental of Georgia, Inc. v. Vincent, 10-0116 (La.App. 1 Cir. 9/10/10), 47 So.3d 1024, 1027, writ denied, 10-2227 (La.11/19/10), 49 So.Sd 387. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions, together with any affidavits admitted for purposes of the motion for summary judgment show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ. Pro. art. 966B(2). IsSummary judgment is favored and designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ. Pro. art. 966A(2),
Appellate courts review summary judgment evidence de novo under the same criteria that govern the trial court’s determination of whether a summary judgment is appropriate. All Crane, 47 So.3d at 1027. On a motion for summary judgment, the burden of proof is on the mover. La.Code Civ. Pro. art. 966C(2). However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion, the mover’s burden does not require that all essential elements of the adverse party’s claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment as a matter of law. La.Code Civ. Pro. art. 966C(2); All Crane, 47 So.3d at 1027.
A fact is material when its existence or nonexistence may be essential to the plaintiffs cause of action under the applicable theory of recovery, meaning that the fact potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 751. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Richard v. Hall, 03-1488 (La.4/23/04), 874 So.2d 131, 137.
Louisiana Civil Code article 2320 provides that masters and employers are answerable for the damage caused by their servants in the exercise of the functions in which they are employed. For liability to attach under Article 2320, Cason must 14show a master-servant relationship existed; that is, that Saniford is considered to be Bethany’s servant. See Hughes v. Goodreau, 01-2107 (La.App. 1 Cir. 12/31/02), 836 So.2d 649, 656, writ denied, 03-0232 (La.4/21/03), 841 So.2d 793; Whetstone v. Dixon, 616 So.2d 764, 770 (La.App. 1 Cir.), writs denied, 623 So.2d 1333 (La.1993). A servant is one employed to perform services in the affairs of another and who is subject to the other’s control or right of control with respect to the physical conduct in the performance of the services. Whetstone, 616 So.2d at 770 (citing Ermert v. Hartford Ins. Co., 559 So.2d 467, 476 (La.1990)). A non-servant agent con *12 tributes to the master’s business, but is not such a part of his master’s business that his physical acts and the time to be devoted to the business are subject to control. Whetstone, 616 So.2d at 770.
Factors to be considered in determining whether a master-servant relationship exists include compensation, status within the organization, performance of a specific mission, intensity of the relationship, control, the role of the organization in conferring authority and exercising control, and direct benefit to the association. Whetstone, 616 So.2d at 770. An unpaid volunteer may be deemed a servant of the organization accepting his services based upon the organization’s right to control the volunteer’s activities. Whetstone, 616 So.2d at 770.
In support of its motion for summary judgment, Bethany offered Saniford’s deposition testimony, as well as an affidavit of Bethany’s chief financial officer, Jared Stockstill. As evidenced by Cason’s motion to supplement the appellate record, Cason also relied on this evidence in opposition to the motion for summary judgment.[1]
| .^Stockstill attested that Bethany’s 220i program is a two-semester, ten-month program intended to foster further religious education and ministry of its interns. Interns enrolled in the program are required to pay tuition. Saniford was not financially compensated for the internship and was free to withdraw at any point. Stockstill attested that Saniford was not in the course and scope of employment with Bethany at the time of the accident.
Saniford testified that he enrolled in the 220i program in August of 2010, following his graduation from high school, and that he paid $4,500 in tuition. The accident occurred in January of 2011. Saniford explained that during the internship, he lived in a dormitory on Bethany’s campus. In addition to attending classes, a requirement of the 220i program was ministering to junior high and high school students at club meetings held at area schools. The interns conducted the club meetings at the schools to which they were assigned, generally following a lesson plan prepared by Bethany. Saniford explained that the purpose of the club meetings was not to recruit membership for Bethany, but was “loosely put, witnessing to them, sharing the gospel.” At most meetings, a leader in Bethany’s youth program, referred to as an “overseer,” was present. Interns were not required to have their own vehicles, but were expected to arrange their own transportation to club meetings.
On the morning of the accident, Saniford was driving his mother’s vehicle to one of the schools assigned to him, where his overseer, Joy Baker, would be meeting him. Baker was a volunteer who was not employed by Bethany. In general, the overseer was responsible for bringing anything necessary for the club meetings, including donuts. Baker asked Saniford to pick up the donuts because it was more convenient for Saniford to do so. The order was called into the donut shop and paid for by Bethany. The accident occurred after Saniford picked up the donuts as he was traveling to the school for the meeting.
|fiBethany argues that the above facts demonstrate an absence of support for an essential element of Cason’s claim, namely that a master-servant relationship existed between Saniford and Bethany. Saniford was not compensated, held no position *13 within Bethany’s church structure, and Bethany did not exercise control over Sani-ford’s physical actions. Cason counters that Bethany’s business is ministering religious doctrine to the public and Saniford was traveling to the school in furtherance of Bethany’s ministry mission, after picking up donuts at his overseer’s direction.
Both parties cite to the case of Whetstone v. Dixon, in which this court held that a master-servant relationship existed between a church and deacon. Like the deacon in that case, Saniford was an uncompensated volunteer. However, in Whetstone this court particularly noted that the deacon held one of the highest levels of authority and responsibility within the church hierarchy and the deacon was on a specific mission for the church that directly related to the scope of his authority and duty. Because of this, it was immaterial that the church had not dictated the deacon’s specific time and route for travel to purchase building supplies to be used in remodeling the church building. Whetstone, 616 So.2d at 772. Based on the nature of the relationship between the church and the deacon, the church was held to be vicariously liable for the deacon’s negligence in causing the accident sued upon. Whetstone, 616 So.2d at 772.
The summary judgment evidence in the case sub judice does not demonstrate the same type of relationship between Saniford and Bethany. Saniford paid tuition to participate in the internship program offered by Bethany, the goal of which was for Saniford to receive training in youth ministry. Interns were free to withdraw, from the program at any time. Successful completion of the program required attendance at club meetings held at area schools, however Bethany did not furnish the interns transportation to the meetings or dictate the 17route to be taken. The consequence of missing the meeting was discipline in the form of writing chapters of the Bible or dismissal from the program. Prior to the accident, Saniford stopped to buy donuts for the club meeting at the request of a supervising volunteer. Doing so was not a requirement of the internship, but was gratuitous on the part of Saniford and done as a convenience for Baker. The evidence does not indicate that Saniford occupied any position within Bethany’s hierarchy, much less a high-level one where he held significant authority and responsibility. Furthermore, Sani-ford explained that successful completion of the program did not result in the option of continuing with Bethany.
After considering the summary judgment evidence de novo, we find that the essential facts necessary for the determination of whether a master-servant relationship existed between Bethany and Sa-niford are undisputed. We further find that Bethany met its burden of pointing out an absence of support for the existence of a master-servant relationship. As an intern, Saniford was not subject to control by Bethany, such as would give rise to liability on the part of Bethany. Cf. Schroeder v. Board of Supervisors of Louisiana State University, 94-0909 (La.App. 1 Cir. 3/3/95), 653 So.2d 612, 616; Matlock v. Hankel, 96-1838 (La.App. 4 Cir. 2/11/98), 707 So.2d 1016, 1018-19 (finding that a volunteer fireman was subject to the control of the fire departments). Cason produced no additional factual support sufficient to establish that she would be able to prove a master-servant relationship at trial. Accordingly, the trial court was correct in entering summary judgment dismissing Cason’s claims against Bethany.
Cason also argues that summary judgment was improperly rendered in favor of Bethany’s insurer, Houston, dismissing it from the suit. We agree. Ca- *14 son named Houston as a defendant in her first amending petition, but set forth no particular allegations against Houston. After Bethany and Houston moved for summary judgment, Cason filed a second amending and supplemental petition for | «damages wherein she alleged that Sani-ford was an insured under Houston’s policy and that Bethany was an insured under the policy for the acts of Saniford as set forth in the original and first amending petitions. Although Houston joined Bethany in moving for summary judgment on the issue of Bethany’s liability, it did not move for summary judgment dismissing the claims asserted in the second amending and supplemental petition regarding coverage under its policy. A court cannot render a motion for summary judgment dismissing a claim that has not been challenged by the pleading. Hoover v. Hoover, 01-2200 (La.4/3/02), 813 So.2d 329, 334. Because Houston failed to adequately place these claims before the court, the trial court’s judgment must be reversed insofar as it dismisses the claims that Houston’s policy provides coverage for Sa-niford’s acts.
CONCLUSION
For these reasons, the trial court’s July 29, 2013 judgment is affirmed as to the claims against Bethany and reversed as to the claims against Houston for coverage under its policy. This matter is remanded to the trial court for further proceedings. Costs of this appeal are assessed equally to Shannon Cason and Houston Specialty Insurance Company.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

. Cason additionally relied upon an internet advertisement for the 200i program, the Secretary of State’s Certificate of Good Standing for Bethany, and the commercial general liability policy issued by Houston.